EASTER v. STATE.

Opinion delivered December 5, 1910.

1. CONSPIRACY—DECLARATION OF CONSPIRATOR.—The statement of a conspirator, made during the existence of the alleged conspiracy, and before its consummation, is competent where the State makes a *prima facie* showing of the conspiracy. (Page 631.)

2. SAME—DECLARATION OF CONSPIRATOR.—It is within the discretion of the trial court to permit the statement of an alleged conspirator to be introduced in a prosecution of a fellow conspirator before the evidence tending to prove the conspiracy was introduced. (Page 632.)

3. SAME—EVIDENCE—LETTER.—In a prosecution of an alleged conspirator for murder, it was competent for the State to introduce a letter written by one of the conspirators to which the name of the defendant was signed with his knowledge. (Page 632.)

4. SAME—EVIDENCE.—It was not error, in a trial for murder, to permit a witness to state that, after hearing the testimony of witnesses at the examining trial and within two days after the killing, he examined the scene of the killing and found tracks there, and that the shoes of one of defendant's alleged fellow conspirators fitted these tracks. (Page 632.)

5. HOMICIDE—INSTRUCTION—WHEN HARMLESS.—While it was error, in a murder case, where there was a conflict as to who did the killing, but the evidence established that it was done by lying in wait, to instruct, in the language of Kirby's Dig. § 1765, that, "the killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused," the error was not prejudicial as assuming that the killing was done by the accused if no such construction was placed upon it by court or counsel, and the question as to who did the killing was otherwise properly submitted to the jury. (Page 633.)

Appeal from Nevada Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*McRae & Tompkins* and *D. L. McRae,* for appellant.

1. It was error to permit the witness Sutton to detail the conversation and statement of John Easter in the absence of the defendant. The general rule does not apply in this case because a conspiracy was not proved—no testimony of a conspiracy to which defendant was a party except the statements of this witness, who, by his own testimony, was an accomplice, accessory and co-conspirator, 77 Ark. 444, 450; 3 Greenleaf. on Ev. (13 ed.) § 92; 92 Ark. 592; 59 Ark. 422; 37 Ark. 67; 55 Mich. 256; 12 Cyc. 442, 444; 8 Cyc. 684.

2. It was also error to permit the witness Sutton to detail the conversation with and statements by Wiley Easter in the absence of the defendant subsequent to the killing. 78 Ark. 284, 290; 45 Ark. 165-171; *Id.* 328; 67 Ark. 234.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

The testimony fully establishes a conspiracy, and the statements of appellants' co-conspirators, made in pursuance of said conspiracy, were properly admitted. To establish a conspiracy, it is not necessary to prove the unlawful agreement by direct and positive evidence. Neither is it necessary that other proof of the conspiracy should be shown before the declarations of an alleged co-conspirator are admissible. 77 Ark. 451; 32 Ark. 220; 59 Ark. 430; 8 Cyc. 677; 12 Cyc. 439; 2 Wigmore, Law of Ev., § 1079.

McCULLOCH, C. J. Appellant was tried under an indictment charging him with the murder of one Matthew Babb, and was convicted of murder in the second degree, his punishment being fixed at fifteen years in the penitentiary. Deceased Babb was appellant's uncle, being the half-brother of Wylie Easter, appellant's father. The testimony tends to establish a conspiracy between appellant and his father, and John Easter, his brother, to kill Matthew Babb. There is also testimony tending to show that Lem Sutton, who was the principal witness relied on by the State, was also a party to the crime. The parties are all negroes, and lived within a few hundred yards of each other in Nevada County.

Babb was shot with buckshot and instantly killed about 7 o'clock in the evening of February 5, 1910. The killing occurred in front of his house, just outside of his gate. His wife, on hearing the shot, ran out of the house and found his dead body. Some of the neighbors came in shortly, and one of them blew a horn for a good while, which was a customary signal for the assembling of the neighbors on account of some unusual incident. None of the Easters went to the scene of the killing that night, though they lived within hearing of the horn.

The next day John and Clint Easter and Lem Sutton were arrested and placed in jail. Subsequently, Wylie Easter and one Simon Tate were arrested, but later released. Lem Sutton testified in substance that on the day of the killing the three Easters made a proposition to him to go in with them and kill Babb, but that he declined to join them in committing the crime. He stated that late in the evening he went over to appellant's house, and was sitting on the porch with John Easter when appellant came up and called to his wife for the gun and shells which were lying on the bed; that appellant's wife gave the latter the gun, and that he and John went off down towards Babb's, and told him (witness) to "keep his mouth," adding that if they went to the pen their father would be there to get them out. He stated further that he heard somebody halloo three times, and a short while afterwards he heard a shot fired. He testified that afterwards appellant and John Easter, while in jail, told him all about the killing and where they stood when they shot Babb.

It is not contended that the evidence is insufficient to sustain appellant's conviction, but that there are several errors of the court assigned in admitting evidence. The first one is that the court erred in permitting Lem Sutton to testify as to statements made to him by Wylie Easter in the absence of appellant. These statements were made on or about the day of the killing and before it occurred. There was sufficient evidence to establish a conspiracy between all three of the Easters to kill Babb, and the statements of either of the three during the progress of the conspiracy, and before the consummation of the conspiratorial act, are competent evidence against either. All that is necessary to render the evidence admissible is for the State to make a *prima facie* showing of the existence of such a con-

spiracy at the time the alleged statements were made. *Chapline v. State,* 77 Ark. 444.

Sutton was allowed to testify as to statements made by Wylie Easter before there was testimony as to a conspiracy. Later in his testimony, however, the evidence tending to establish the conspiracy was introduced, and there was no error, for it was a matter within the sound discretion of the court to control the order in which the testimony should be adduced.

The State introduced a letter purporting to have been signed by John and Clint Easter and Lem Sutton. This was objected to, and the ruling of the court in admitting the letter is assigned as error. The parties were all in jail at the time, Clint and John being confined in jail together. There was evidence tending to show that the letter was written by John Easter at the dictation of Sutton; but on the other hand there was evidence warranting the conclusion that appellant, Clint Easter, knew that the letter was being written and given to Sutton, and knew the contents thereof, therefore it was competent evidence against him.

The next objection is as to the admission of the testimony of one C. B. Moon, who stated that he was present at the examining trial and heard the statement of Lem Sutton as to what Clint and John Easter had said, about the details of the killing, where they stood, etc., and that he then went to the scene of the killing and found tracks there, and that John Easter's shoes fit the tracks. The witness did not undertake to relate in detail what Sutton had testified at the examining trial. He merely stated that he heard Sutton testify as to what appellant and John Easter had told him about the occurrence at the scene of the killing, and that he thereupon went and made the examination, and was allowed to testify as to the conditions that he found there. Appellant objected both to the statement of the witness as to what Lem Sutton had said, and also as to the statement of the witness relative to what he found at the scene of the killing. The latter objection was based on the alleged ground that it was too long after the killing occurred. Lem Sutton gave the same account in his testimony at this trial that he had given at the examining trial with reference to what appellant and John Easter, while together with him in jail, told concerning the details of the killing, and where they stood, etc. Witness Moon, as has already been shown, did not state the

substance of Sutton's testimony; but, even if he had done so, there was no prejudicial error, for Sutton testified to the same facts on the witness stand. It was competent to permit the witness to testify as to the conditions he found at the scene of the killing, after having heard the testimony of the witnesses at the examining trial. According to his testimony, this occurred on Monday after the killing had taken place Saturday night. The parties had been in jail since Sunday morning, and it was competent to show the conditions surrounding the scene of the killing and the fact that there were tracks there near the scene of the killing to which the shoe of John Easter, one of the alleged conspirators, fitted.

There are some other assignments of error in the admission of testimony, which we have considered and find not to be well founded.

Objection was made, and exceptions saved, to the instructions of the court given in the exact language of section 1765 of Kirby's Digest, which reads as follows: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide." This instruction was given in connection with many others on the law of homicide, and in connection with instructions telling the jury that it devolved on the State to prove all the material allegations of the indictment beyond a reasonable doubt. It is contended that this instruction was not applicable in a case where there was a conflict as to whether or not the defendant did the killing. It is true that this statute is applicable only in cases where the killing is claimed to have been done in self-defense, and is not applicable in cases of killing by lying in wait. There is no prejudicial error, however, in giving it in any case, for no harm could result in giving it as an abstract proposition of law. The danger of giving it in the exact language of the statute is that it might be construed as an assumption by the court that the killing had been done by the accused. The instruction was not, however, objected to on that ground, and that construction seems not to have been placed upon it by court or counsel.

We do not think that under the facts of this case, where there was a sharp conflict as to who did the killing, and that question was submitted to the jury on correct instructions clearly defining the issue, there could possibly have resulted any prejudice from giving this instruction. The instruction was simply a misfit in this case, which could not possibly have had any bearing on the result.

On the whole case, we conclude that the defendant has received a fair trial, and that the evidence sustains his conviction. So the judgment is affirmed.