HOGUE *v.* STATE.

Criminal 4070.

Opinion delivered November 22, 1937.

*Simmons & Lister,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

SMITH, J. Appellant was found guilty of voluntary manslaughter and given a sentence of seven years in the penitentiary, from which judgment is this appeal. It was alleged in the indictment under which he was tried that he had killed one Royston Judy by shooting him with a certain shotgun.

There was testimony that appellant had made threats of violence against deceased, which, however, had never been communicated. Appellant lived in a house on a farm which deceased did not own, but of which he had charge. Deceased went to the home of appellant for the purpose of demanding payment of rent. Appellant declined to discuss the subject with deceased at that time and told deceased to return when he was sober. The testimony is in conflict as to the state of deceased's intoxication. Lester Slate, who accompanied deceased to appellant's home, testified that deceased was not drunk at all, although they drank two small bottles and one quart bottle of beer. Deceased, whose hearing was de-

fective, went upon the porch, where appellant was seated. Appellant told deceased to come no farther, and when deceased started up the steps of the porch appellant stepped inside the door of the house, got his gun and fired the fatal shot, killing deceased almost instantly. The testimony is conflicting as to whether deceased continued his advance when told to stop. Slate testified that when he saw appellant with the gun he told appellant not to shoot, but appellant said, "I will do it," and immediately fired the fatal shot. Deceased was not advancing at the time, according to the testimony of Slate.

The testimony is in conflict as to whether deceased made a gesture as if to draw a weapon. Appellant testified that he saw deceased put his hand to his hip and he thought a murderous assault was about to be made upon him. Slate testified that deceased took a book of cigarette papers out of his pocket as he went up the steps and that he had the cigarette book in his hand when he was shot. The body was not moved until after the arrival of the sheriff, who testified that the porch was about seven feet wide, and that deceased's hips and feet were lying on the porch and his shoulders on the front steps. Deceased was unarmed.

We cannot say that the testimony is insufficient to support the verdict; indeed, a reversal is not asked on that account. The errors assigned relate to the giving and the refusal to give certain instructions. As to the instructions given it may be said that no specific objection was made to any of them, and the objection to the instructions was *en masse*. It was said in the case of *Long* v. *State,* 140 Ark. 413, 216 S. W. 306, that such an exception cannot avail unless all the instructions are erroneous. Certainly all of them were not erroneous; indeed we find no one which was. They appear to be what might be called the usual instructions in homicide cases, several of which have been expressly and frequently approved by this court.

The chief insistence for the reversal of the judgment is the refusal of the court to give requested instructions numbered 7 and 8. Both might very well have been

given, and the refusal to give either would have been error had they not been sufficiently covered by other instructions which were given. Instruction No. 7 copied substantially § 2995, Pope's Digest, defining and declaring the rights of one to defend himself or his habitation against one who manifestly intends or endeavors by violence or surprise to commit a known felony. Instruction No. 8 charged the jury to acquit the defendant if there was a reasonable doubt as to his guilt, and that the burden was upon the state to prove every material allegation of the indictment.

The court had given, however, at appellant's request, instructions numbered 4, 5 and 6. These told the jury that the defendant was entitled to act upon appearances as they addressed themselves to him, and that if they were such as to induce in the mind of a reasonable person, and had induced in appellant's mind, the fear that death or great bodily harm was about to be inflicted, that defendant had the right to act under these appearances even though he was mistaken as to the extent of the danger. These instructions told the jury that where a person, in his own dwelling, is assaulted, or is about to be assaulted, under such circumstances as to furnish reasonable ground for such person to believe that his assailant intends to take his life or do him great bodily injury, that such person is not required to retreat, but has the right to resist force with force, even to the extent of taking the life of his assailant if he, acting without fault or carelessness, honestly believed that it was necessary for him to do so, to protect himself from losing his life or receiving great bodily harm at the hands of his assailant, and that this was true although the necessity might not now appear to the jury to have existed. These instructions submitted and covered the defense interposed, and would have required the acquittal of the defendant if the jury had found that he was under the apparent necessity of killing his assailant to protect himself from death or great bodily harm. The verdict of the jury reflects a finding that this necessity did not

exist, and, as we have said, the testimony of Slate supports that finding.

The court gave an instruction conforming to § 2968, Pope's Digest, which reads: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide." It is argued that this instruction cast upon the defendant the burden of proving his innocence, inasmuch as he admitted the killing. Such, however, is not the effect of the instruction when read in connection with instruction No. 11, given by the court, reading as follows: "Under the law the defendant is presumed to be innocent. This presumption is evidence in his behalf and protects him from a conviction at your hands until his guilt is established to your satisfaction beyond a reasonable doubt."

This assignment of error is disposed of by the opinion in the case of *Tignor* v. *State,* 76 Ark. 489, 89 S. W. 96. A headnote in that case reads as follows: "Where the jury are instructed, in a murder case, that the killing being proved, the burden of proving circumstances that justify or excuse the homicide devolves upon the accused, as provided by Kirby's Digest, § 1765, they should be further instructed that on the whole case the guilt of the accused must be proved beyond a reasonable doubt."

The judgment in that case was reversed because, after giving § 1765 of Kirby's Digest (which appears as § 2968, Pope's Digest) as an instruction, the court did not further charge the jury that on the whole case the guilt of the accused must be proved beyond a reasonable doubt. Here, however, the instruction numbered 11, copied above, does what the court there said should have been done.

Upon the whole case we find no error, and the judgment must be affirmed, and it is so ordered.