THURMAN *v.* STATE.

4449                                    204 S. W. 2d 155

Opinion delivered June 9, 1947.

Rehearing denied September 22, 1947.

*G. T. Sullins* and *Rex W. Perkins,* for appellant.

*Guy E. Williams,* Attorney General and *Arnold Adams,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Appellant, Bertis F. Thurman, was charged by information with the crime of first degree murder in the killing of Charles M. Roller on January 1, 1946. The jury found appellant guilty of murder in the second degree and fixed his punishment

at 10 years in the penitentiary. This appeal is prosecuted from the judgment rendered on the jury's verdict.

Viewed in the light most favorable to the state, the testimony reveals the following facts: Appellant and Charles M. Roller resided about eight blocks apart in Lincoln, Washington county, Arkansas. On the day in question the Roller family had finished their evening meal and retired to their living room. The Roller home faces west and there is a door leading to a west front porch from the living room. This door had a window in it and there were two other windows on the west side of the living room. The front porch was enclosed by lattice work with an opening at the point of entrance to the front door and two other diamond shaped openings on the west side. It was dark and lights were on in the living room and dining room which was east of, and adjacent to, the living room. Blinds on the windows were up.

Roller's dog began barking about 6:15 p. m. Roller arose from a couch upon which he was lying and walked to the front door to investigate. He opened the door and walked outside. As he closed the door behind him, or shortly thereafter, a shot was fired and Roller staggered back into the living room. After he was laid on the floor by a son, Roller said to his wife, "Vernie, meet me in heaven." Mrs. Roller asked him if he was going to heaven and he said, "Yes," and then stated, "It was Thurman, Bertis Thurman." Shortly thereafter Roller stated to the men who accompanied an ambulance that had arrived to take him to the hospital, "Don't take me away. I want to die at home, and I haven't got long." Before Roller was removed to the hospital, Cecil Remington, a night marshal and deputy sheriff, asked Roller if he knew who shot him and Roller replied, "Yes, it was Bertis Thurman—I wasn't over five or six feet from him and looked him directly in the face." Roller died at 7:19 p. m. from the effects of a shotgun wound in his left side about one inch above the twelfth rib.

About two weeks before the killing appellant called at the Roller home in the afternoon. He identified him-

self and told Mrs. Roller that he had caught her husband prints in a field or garden within 20 feet of the south with his (appellant's) wife that morning. When Mrs. Roller said she was sorry but could not help that, appellant replied: "I can. I got my gun this morning, but my wife knocked it out of my hand. Just remember there is always another time." Mr. Roller informed her husband of this conversation. Three days prior to the killing appellant's wife filed suit for divorce.

Officers went to appellant's home shortly after the shooting and took him into custody. A single barrel shotgun with a loaded shell in it was found in appellant's house. The gun had an odor of "freshly fired" gunpowder. Appellant informed the officers that the gun had not been fired for months. He also stated that the loaded shell was the only one he had possessed for months. The next day the officers found the metal end of an empty shell in appellant's stove. One end of the shell had been burned and it was the same type and brand as the shell found in the gun. The gun and shells were turned over to a ballistics expert with the state police who testified that the burned shell was fired from appellant's gun according to certain tests made by the witness.

On January 2, 1946, the sheriff found some footside of the Roller home. A wooden box was placed over one of the prints to preserve it. Two or three days later the sheriff secured appellant's shoes and placed one of them in the track which had been preserved. The sheriff and an attorney who assisted in the investigation testified that the shoe exactly fit the track.

Appellant denied that he shot deceased and offered an alibi which was corroborated by several witnesses who testified that appellant was either at his home or a filling station across the street at the time of the killing. Two of these witnesses accompanied appellant on a trip to the country on the afternoon in question and testified that appellant wept about his family troubles and was in a hurry to get back to Lincoln. There was a conflict in

the testimony as to the time it would take to walk from appellant's home to the Roller home. The evidence was also in dispute as to whether light would radiate through the windows and front door of the Roller home sufficiently to, permit identification of a person near the front porch under the conditions existing at the time the fatal shot was fired.

Appellant's first contention for reversal of the judgment is that there was no valid information filed in the case. The information is dated January 2, 1946, and signed, "Jeff Duty, Prosecuting Att'y, by Glen Wing, Deputy Pros. Att'y." Appellant made no objection to the information before going to trial. The record discloses that appellant waived arraignment and pleaded not guilty without challenging the form or sufficiency of the information. The jury was impaneled and sworn and the state had rested its case when appellant moved for an instructed verdict of not guilty "for the reason that evidence has been introduced that there was no proper information filed in this case in the time and manner and by the person required by law." There was evidence that the prosecuting attorney was out of the county and that his deputy, who purportedly signed the information, was ill on the date the information was filed. The sheriff testified that he enlisted the assistance of another attorney in making his investigation of the case, but there was no showing that this attorney had anything to do with filing the information or that it was not actually signed and filed by the deputy prosecuting attorney. This attorney and the circuit clerk, before whom the information was filed, testified before the state rested its case and neither was questioned about the filing of the information.

The objection to the information came too late. Section 3882 of Pope's Digest provides: "Upon the arraignment, or upon the call of the indictment for trial, if there is no arraignment, the defendant must either move to set aside the indictment or plead thereto." In *Whitted* v. *State,* 188 Ark. 11, 63 S. W. 2d 283, this statute was construed as requiring a defendant to present his

objections to the validity or regularity of the indictment on arraignment, or call of the indictment for trial, except where the question of the sufficiency of the indictment to charge a public offense is involved. It was there said: "This statute contemplates that, before the trial of the cause, the accused shall present such objections as he cares to make to the return of the indictment." See, also, *Carpenter* v. *State,* 62 Ark. 286, 36 S. W. 900; *Ware* v. *State,* 146 Ark. 321, 225 S. W. 626; *Holt* v. *State,* 171 Ark. 279, 284 S. W. 1.

In *Geoates* v. *State,* 206 Ark. 654, 177 S. W. 2d 919, the objection was that the information was not sworn to by the deputy prosecuting attorney. The court held that the objection should have been tested by motion to quash before trial, saying, "It is contemplated that, before trial, the defendant shall present such objections as he cares to make where there is want of formality in bringing the accusation." It was further said in that case, "In the absence of statutory mandates relating to an information, laws pertaining to indictments are applicable when not inconsistent with the nature of the process." Under the authorities cited appellant waived the objection to the information and the trial court did not err in overruling the motion for an instructed verdict on this ground.

It is next argued that error was committed in the admission of dying statements of deceased, the contention being that it was physically impossible for deceased to have seen his assailant, and that his statements constituted a mere expression of opinion on his part that appellant was the assailant. Appellant relies on the case of *Jones* v. *State,* 52 Ark. 345, 12 S. W. 704. In that case deceased was sitting by his fireside at night when he was shot by someone who fired from the outside through a crack in the house. It was held that a declaration by the deceased that a person other than defendant shot him was inadmissible because a mere opinion and the court said: "A mere expression of opinion by the dying man is not admissible as a dying declaration, and it is immaterial whether the fact that the declaration *is* mere

opinion appears from the statement itself, or from other undisputed evidence showing that it was impossible for the declarant to have known the fact stated. If, upon any view of the evidence, it is possible for the declarant to know the truth of what he states, his declarations, being otherwise competent, should be received and considered by the jury in the light of all the evidence.''

The facts in the Jones case, *supra,* are clearly distinguishable from those in the instant case. We cannot say, as a matter of law, that it was physically impossible for the deceased to have observed and recognized appellant at the time of the shooting. We think the trial court properly submitted to the jury the question whether the statements attributed to the deceased were in fact made, and, if made, whether same were true or false. *Burns* v. *State,* 155 Ark. 1, 243 S. W. 963; *Gray* v. *State,* 185 Ark. 515, 48 S. W. 2d 224. In this connection the court gave instruction No. 20 at the request of appellant which reads in part: ''The Court has permitted some evidence to go to the jury as to a statement said to have been made by the deceased after he was shot. This testimony should not be considered by the jury in arriving at a conclusion as to whether the defendant did the shooting unless the jury first finds beyond a reasonable doubt that the deceased knew that it was the defendant who shot him. If the jury finds that such a statement was made upon the mere suspicion or belief that it was the defendant who shot him they should disregard it. All the facts and conditions surrounding the parties at the time of the shooting should be taken into consideration by the jury in arriving at a conclusion.'' This instruction was more favorable to appellant than he was entitled to, under the law.

It is next contended that the court erred in permitting the sheriff and his assistant to testify concerning the comparison of the footprint found near the Roller home with the shoe of appellant. It is earnestly insisted that the taking of appellant's shoe while he was a prisoner and making the comparison with the track found near the Roller home in the absence of appellant, or his counsel,

violates the rule against self-incrimination. The testimony reflects that appellant voluntarily removed his shoes and gave them to the sheriff at the latter's request. There is no evidence of force being used, and, as stated by the Iowa court in *State* v. *Arthur*, 129 Iowa 235, 105 N. W. 422: "It is not enough to say that defendant had reason to believe that his shoes would be taken from him by force if he did not voluntarily surrender them."

This court has uniformly held testimony concerning tracks and footprints discovered near the scene of a crime admissible if a connection with defendant by means of comparison is shown. *Easter* v. *State,* 96 Ark. 629, 132 S. W. 924; *Trimble* v. *State,* 150 Ark. 536, 234 S. W. 626; *Penton* v. *State,* 194 Ark. 503, 109 S. W. 2d 131; *Hendrix* v. *State,* 200 Ark. 973, 141 S. W. 2d 852; *Nolan and Guthrie* v. *State,* 205 Ark. 103, 167 S. W. 2d 503. In *Hendrix* v. *State, supra,* the court quoted with approval a headnote to the case of *Biggs* v. *State of Indiana,* 201 Ind. 200, 167 N. E. 129, 64 A. L. R. 1085, as follows: "The taking of his shoes from one arrested for stealing corn, to show the tracks made by them were like tracks near the crib from which the corn was stolen, does not violate a constitutional provision that one shall not be compelled in a criminal case to bear witness against himself." In *People* v. *Breen,* 192 Mich. 39, 158 N. W. 142, defendant's shoes were taken by an officer for the purpose of comparing them with footprints and the officer was permitted to testify that the shoes seemed to fit the footprints. The Michigan court held that the testimony was not objectionable as requiring defendant to give testimony against himself although he was not present when the shoes were being compared with the footprints. We conclude that there was no violation of the rule against self-incrimination in the admission of the testimony concerning the footprint and the comparison made with the shoe of appellant.

It is also contended that error was committed in the trial court's refusal to grant a new trial on account of newly discovered evidence. *Ex parte* affidavits of Grace Funk and Calvin Thomas were attached to the motion

for new trial. The affidavit of Grace Funk details suspicious behavior of her former husband, Charlie Hinkle, before and after the killing and concludes with the opinion that Roller was killed by Hinkle. It is also stated in the affidavit that the facts set forth therein were related to counsel for appellant and others at a conference in affiant's home in Lincoln on the day before the trial. Evidence, to be newly discovered, must be found out since the trial, and it must appear that it could not have been known at the, time of the trial by the exercise of reasonable diligence. *Reeder* v. *State,* 181 Ark. 813, 27 S. W. 2d 989. It is apparent from the affidavit of Grace Funk that her testimony, if admissible, was not newly discovered.

The affidavit of Calvin Thomas is to the effect that appellant was at the filling station across the street from his home when Thomas visited there about 6 p. m. on the day of the killing and when he left, "which was some time after 6 o'clock p. m." This evidence was merely cumulative to the testimony of several other witnesses who testified in support of the alibi offered by appellant. There was no abuse of the broad discretion abiding in the trial judge in refusing to grant a motion for new trial based on this evidence. *Carter* v. *State,* 174 Ark. 871, 298 S. W. 7.

It is finally insisted that the conviction for second degree murder does not reflect a proper verdict, since appellant should have either been convicted of first degree murder, or acquitted, under the evidence. The trial court gave instructions defining the lower degrees of homicide at the request of appellant. It is true that the jury might have found appellant guilty of the higher degree of homicide under the evidence, but he cannot complain of their failure to do so. *Roberts* v. *State,* 96 Ark. 58, 131 S. W. 60; *McGough* v. *State,* 113 Ark. 301, 167 S. W. 857.

Other assignments of error set out in the motion for new trial are not argued by appellant. We have care-

fully considered these and find them to be without merit. No error appearing in the record, the judgment is affirmed.