OGLES v. STATE.

4542                                                217 S. W. 2d 259

Opinion delivered February 7, 1949.

582

*Verlin E. Upton, Marcus Fietz* and *W. Leon Smith,* for appellant.

*Ike Murry,* Attorney General and *Arnold Adams,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Darrell Ogles, 24 years of age, shot and killed Tom Green in June 1948 and has appealed from a judgment of life imprisonment.

Green was Marshal in the Town of Rector and was sometimes aided by Night Officer John Joiner. During the afternoon of the day of the tragedy appellant, with his brother Leon, had patronized a pool hall, where Green and Joiner were informed a disturbance had been caused by the Ogles brothers. When the officers returned a second time to the pool hall they were convinced that Leon was intoxicated. He was directed to go home to avoid arrest, and seemingly acquiesced. In leaving, Leon crossed the street, entered a taxicab, and had driven two blocks or more when it occurred to him that Darrell was still at the pool hall; thereupon the chauffeur was told to return.

Following his brother's departure, Darrell remained but a short time at the pool hall before beginning his quest for Leon. Walking from the pool hall and turning in a southerly direction, Darrell was in a position near where the taxicab with Leon stopped, and as the latter walked toward the pool hall—obviously under the influence of liquor, he encountered the two officers. Each took hold of one of Leon's arms in a manner to minimize resistance, and started to the town jail.

When Darrell realized that an arrest had been made, he impulsively approached the three and either requested or demanded that the prisoner be released. Darrell testified that as he walked up Green said to Leon, "You are going to jail if I have to kill you." He further asserted that Green was asked not to shoot Leon, and that he (Darrell) offered to help the officers. Perry Householder as a State witness agreed with Darrell in this one particular, for he understood Darrell to say, "Turn him loose: if he's under arrest we will go to jail with

you—turn him loose". But, said Householder, just before Darrell reached the scene of conflict Leon had been "stamping on the officers' feet and kicking at what I call their shins". This witness, spoken of as an "ex-preacher", testified that in response to Darrell's direction that Leon be freed, Green said, "Don't try to pull me loose from a man I've got arrested for being drunk". Darrell at that time had his hands on Green, who attempted to shove the intruder away.

The different witnesses who saw these preliminaries are in substantial accord that Green tried unsuccessfully to disengage himself from Darrell, and that while they were contending both verbally and physically, Darrell succeeded in wresting the officer's pistol from its holster, then shifted to a position in front of Green and said, "Now turn him loose or I'll kill you". Householder said Darrell "sprang back", or "jumped back two steps". Green's response was, "Put that down". Green at that moment released the grip he had on Leon and moved quickly toward Darrell. The latter raised the pistol, but Householder grabbed his arm, saying, "Don't do that!" Green by that time had drawn a blackjack. As Darrell backed away Green advanced, endeavoring to use the blackjack. Darrell fired in circumstances causing Householder to think one of Green's legs had been hit. The officer continued toward Darrell, who fired a second shot, and Green, with the exclamation "Oh", fell to the sidewalk. Joiner, who was still holding Leon, moved toward Darrell, having drawn his own pistol. In the meantime Householder had been accidentally hit by Green as the latter struck at Darrell with the blackjack. Force of the blow knocked Householder to the pavement. After four shots had been fired by Darrell, Joiner, while wrestling with Leon, shot Darrell in the shoulder.

Joiner's version was that when Darrell grabbed the gun and ran in front of Green, he (Joiner) released Leon. After Darrell had fired three shots Joiner succeeded in firing once. This was the bullet that struck Darrell in the shoulder. Joiner then turned to grapple with Leon, "who had nailed down my gun". Apparently

the scuffle spoken of by Householder occurred at this time. According to Joiner, he and Leon, while Leon was endeavoring to take Joiner's gun, moved off the sidewalk. Joiner says that at that instant he fell and "I was on my back right in front of the gun". Green, on his knees, supported himself with his left hand and struck Leon with the blackjack, but was too weak from three shots to put any force into the effort. Green attempted to again use the blackjack, and Darrell fired a fourth shot. Green fell to his side, but raised to an elbow position. Darrell then struck the prone officer on the side of his head, using the pistol as a bludgeon, and at the same time kicked him in the mouth. When Green again attempted to rise, Darrell pointed the pistol and "snapped" it at the dying officer, but the weapon was empty. Darrell turned to Joiner, who was wrestling with Leon for Joiner's pistol, and struck the officer in the head. Joiner says he "rolled Leon over" and was attempting to subdue him when Darrell rushed up and kicked him three times in the head. Just then Jesse McCord intervened by taking Green's gun from Darrell, and also took possession of the pistol Joiner and Leon were wrestling for.

There was corroboration of this testimony by other witnesses, some of whom, as might be expected, did not see the transactions in the exact sequence described by Householder and Joiner. However, the jury was warranted in believing that Darrell's purpose was to free his brother, irrespective of consequences. When he appropriated Green's gun and threatened to shoot if Leon were not released, there was an assault with a deadly weapon. It is not sufficient to say that this aggressor might have pursued a more pacific course if Green had chosen a less courageous way and had acquiesced in the demand. The officer had a right to disarm Darrell. Pope's Digest, § 3267; Ark. Stats. (1947), § 41-2803. It is seldom that a record reflects greater physical courage than that attending Green's actions. There was testimony to the effect that Leon chided Green while he was lying mortally wounded.

The information charging appellant with having murdered Green was executed July 22, 1948. It was signed by the Prosecuting Attorney and, *prima facie,* sworn to before the Circuit Clerk, then filed with the Clerk, who issued a warrant of arrest. Preliminary hearing was waived. Because of local feeling, the prisoner was taken to Jonesboro and placed in jail. A special term of Court was called for August 30th. Appellant was then arraigned, entered a plea of not guilty, and Court adjourned until September 13th. On the 13th counsel moved to quash the information (1) on the ground that the Prosecuting Attorney was not in Clay County when the information was presumptively sworn to; (2) it was not prepared, presented, and filed as required by Act 160 of 1937, and (3) the Prosecuting Attorney is without power to file information with the Clerk. It was further requested that the defendant be committed to State Hospital, for mental observation. By appropriate proof the defendant showed that the Prosecuting Attorney did not appear before the Clerk to swear to the information.

The point argued is that the Court was without jurisdiction.

We do not determine whether in any case the filing of an information with the Clerk, as distinguished from its presentation in open Court, would be sufficient. Since informality does not avoid the process, irregularities may be waived. *State* v. *Eason and Fletcher,* 200 Ark. 1112, 143 S. W. 2d 22; *Thurman* v. *State,* 211 Ark. 819, 204 S. W. 2d 155. When appellant entered his plea of not guilty he was in Court, where the information had served its full purpose before any question of sufficiency was raised.

The same principle—waiver—prevents appellant from successfully contending he should have been sent to State Hospital on the motion of September 13th. When arraigned August 30th there was no hint that such a defense would be interposed. It is significant that at trial nothing suggestive of mental irresponsibility in a

legal sense was testified to. See *Lambert* v. *State*, 213 Ark. 567, 211 S. W. 2d 431.

To avoid the effects of waiver, counsel insist that action of the Court in considering the preliminary motions September 13th had the effect, even if not so intended, of permitting a tentative withdrawal of the not guilty plea, hence actual arraignment did not occur until the Court disposed of the motions.

While the attorneys appearing for appellant have diligently and expertly represented their client, and in oral argument painstakingly and impressively presented the issues contended for, the fact remains that the trial Court was not without jurisdiction because of the irregularities complained of, and the contentions must be rejected. The evidence was sufficient to submit first degree murder, and no error was committed in giving or refusing instructions. It follows that the judgment must be affirmed.