Brown *v.* State.

4957

329 S. W. 2d 521

Opinion delivered December 14, 1959.

*Robinson, Sullivan & Rosteck,* for appellant.

*Bruce Bennett,* Atty. General by *Ancil M. Reed,* Asst. Atty. General, for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Willie (Bob) Brown, was charged with First Degree Murder, and on trial was convicted of Voluntary Manslaughter and his punishment fixed at five years imprisonment in the State Penitentiary. From the judgment comes this appeal.

Numerous alleged errors are cited in the Motion for New Trial, the first several questioning the sufficiency of the evidence. The proof on the part of the State reflected that appellant and Elmer Isaacs were members of the Elks Club, located at 914½ Gaines Street, and were present there on Saturday night, June 21st. Isaacs was employed at the Elks Club and was in charge of the bar and gambling activities. Brown had reported a shortage from the tables, and testified that Isaacs called him "watch-dog", and "every time I would go past him, he would wheel around like this (indicating) so that I could see that pistol." George King, who was also at the club, stated that between two and three a.m. (Sunday morning), Isaacs told him to stay away from Bob Brown — that he was going to kill Brown and didn't want to shoot King accidentally. The witness testified that he told Brown about this conversation, and asked the latter to leave. Around 7 a.m., King went

downstairs from the building, and saw Brown sitting in his car. He testified that appellant called to him, and he went over, and the two engaged in conversation. When they heard Isaacs coming down the stairs, Brown got out of the car and started around it. The witness stated that Brown called Isaacs and said, ''I want to talk to you'', then ''don't come out of your pocket'', and further testified that Brown fired three shots in quick succession. Other testimony indicated that there was a pause after the first shot, but that the last two were fired in quick succession. Both King and Bud Davis (who was walking down the stairs with Isaacs) testified that they did not see a gun in Isaacs' hand when Brown commenced shooting. From Davis' testimony:

''A. Well, he was standing up there at the curb when I saw him and he walked up and called Mr. Ike and told him not go to his pocket and I just thought they was playing and when I saw anything he shot him and he kind of staggered, and after he came to the door and kind of straightened up, Bob shot him a couple more times.

Q. You heard him say, 'Don't go for your gun'?

A. Yes, sir.

Q. Did Ike have his gun out coming downstairs?

A. No, sir.

Q. Did you know he had a gun?

A. No, sir.

Q. Did you see it in his hand coming down the steps?

A. No, sir.

Q. When did you see it?

A. When he straightened up to come back to the door.''

All three shots struck Isaacs, and Dr. H. A. Dishongh, county coroner, testified that any one of the three could

have been a fatal wound. A pistol was found under Isaacs' body, but was on safety. The proof thus clearly reflects that Brown was armed in advance, had been told several hours earlier that Isaacs had threatened him (Brown), but instead of leaving or trying to avoid an encounter, was apparently waiting in his car for Isaacs to leave the club. The jury could certainly have found that Brown was in no danger of losing his life, or of receiving great bodily harm; that he was the aggressor, and opened fire without any legal justification.[1] The proof was adequate to justify a conviction for manslaughter, and in fact, might well have justified a conviction for a higher degree of homicide.

By assignment No. 9, appellant argues that the court erred in refusing to allow Buford Husband to testify relative to threats made by the deceased toward appellant. A record was made in Chambers, which reflects only threats made toward Husband, rather than threats toward appellant. The testimony was properly refused.

By assignment No. 10, appellant argues that the Court erred in making a remark in open court, which was printed in the Arkansas Gazette, on Tuesday, February 17, 1957, as follows:

"When all of Sullivan's cross-examination questions to King produced only more details about the threat, Judge Kirby asked Sullivan if King were his witness. Kirby remarked that Sullivan had not challenged any of King's testimony on cross-examination." The assignment of error pointed out that the jury had ample opportunity to read the article containing this statement. As noted by the Attorney General, it is not clear whether this assignment of error deals with the remark made by the court in the presence of the jury, or whether the assignment relates to the newspaper article which could have been read by the jury. As regards the former, the record reflects that near the end of the cross-examination, after several questions by appellant's counsel, the court said:

---

[1] Brown claimed self defense, but this made a question for the jury.

"The Court: Let him answer the questions. Is this your witness?

Mr. Sullivan: No, I am cross-examining him.

The Court: You haven't been cross-examining him."

No objection was made to the remark, and accordingly, the alleged error cannot be considered by this Court. See *Roach* v. *State,* 222 Ark. 738, 262 S. W. 2d 647. Turning now to the newspaper article, it might first be stated that no such remark (as was attributed to it by the story) appears to have been made by the court; at any rate, it is not shown that the article in question was objected to, or even mentioned, during the trial. Furthermore, there is nothing in the transcript which indicates that any juror read the article. Of course, it is necessary that appellant show not only that members of the jury read the item, but that they were prejudiced thereby. The record also reflects that upon recessing February 16th, the court admonished the jury not to read any newspaper articles about the case. No objection having been made, and no prejudice having been shown, it follows that this assignment is without merit.

It is argued that the court erred in "permitting the State to offer parts of a statement or confession made by the defendant into evidence and in refusing defendant's request for a copy of such purported statement or confession." According to Brown, he was taken from the jail to the prosecuting attorney's office the day after the shooting occurred, and required to make a statement. "There was so many people up there — I thought it was a bunch of TV men and radio men and reporters and those two officers and I don't know who all — Deputy Sheriff Bussey." Appellant's argument indicates that he considered the statement as being in the nature of a confession. The statement was not a confession, was not signed, was not considered by the State as a confession, and was never offered in evidence by the prosecuting attorney. During

cross-examination, the prosecuting attorney, for the purpose of impeaching appellant's testimony, interrogated Brown as to some answers which had been given under questioning in the statement taken the day after the shooting, and which had been transcribed by a stenographer. The purpose was to show the inconsistencies between appellant's testimony before the jury and his statement made in the prosecuting attorney's office. Counsel's objections were overruled by the court. Prior to commencing the trial, appellant's counsel requested a copy of the statement, and during the examination, they again made the request. The request was disallowed by the court. Appellant argues that in permitting the prosecuting attorney to read excerpts from the statement, the State was enabled to present to the jury such portions as favored the prosecution, without letting them hear the portions that favored the defense; that the jury should have been allowed to see, or hear, the entire statement read. In *Black* v. *State,* 215 Ark. 618, 222 S. W. 2d 816 ('49), the appellant objected to the use, by the deputy prosecuting attorney, of notes transcribed by a stenographer relating to what the accused had said at the police station after arrest. This Court said:

"Objection was made and overruled to the use of these notes. Had a confession been shown, it would have been improper to introduce any part thereof without introducing the whole statement; however, the deputy prosecuting attorney in his examination of appellant offered to submit the transcription to appellant's attorney, which offer was declined. The principal use of the transcription was to ask appellant if he had made certain statements disclosed by the transcription, some of which he admitted, while others were denied. The testimony on the part of the state was to the effect that appellant had made at the police station certain statements which he denied having made while testifying as a witness at the trial. We think this cross-examination was entirely proper and permissible."

In *Hamm* v. *State,* 214 Ark. 171, 214 S. W. 2d 917, the same contention was made, and in affirming appellant's conviction for rape, this Court said:

"Appellant was questioned by the Prosecuting Attorney after his arrest, and his answers were taken down by the Prosecuting Attorney's stenographer. These statements were not in the nature of a confession. On the contrary, they were a denial of guilt. But appellant as a witness undertook to account for his whereabouts on the night of the crime, and particularly as to the time when he returned home that night. The stenographer was called to read her notes in contradiction of the testimony given by appellant at the trial. It is permissible always to impeach the testimony of a witness by showing that he had previously made statements in conflict with his testimony."

It appears therefore, that there was no error in permitting the State to show these prior inconsistent statements. In addition, the prosecuting attorney offered to allow the appellant's attorney to examine the statement while he read from it, and the court suggested that counsel "go over there and read it with him." We certainly see no sound reason for refusing to give a defendant a copy of any statement made by him, and are rather of the opinion that the better practice would be to furnish a defendant with a copy of a statement — or confession — made by him. However, we know of no law that requires the State to divulge every detail of its case. Be that as it may, in the case before us, we find no prejudice to appellant's rights because of the court's ruling.

It is argued that the court erred in giving State's Requested Instruction No. 8, which reads as follows:

"The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless by proof on the part of the prosecution it is sufficiently manifest that the offense amounted only to manslaughter, or that the accused was justified or excused in committing the homicide."

Appellant contends this instruction is misleading, in that the jury could feel that if there was a reasonable doubt of the guilt of Brown on the murder charge, they could still convict him of manslaughter. The instruction is copied from the statute (Ark. Stats. § 41-2246). In *Tignor* v. *State*, 76 Ark. 489, 89 S. W. 96, this Court said:

"Again, the court gave section 1765 of Kirby's Digest, to the effect that, the killing being proved, the burden of proving circumstances that justify or excuse the homicide devolves upon the accused, etc. Now, this instruction is taken from the statute, and is the law, but it should have been accompanied with an instruction that on the whole case the guilt of the defendant must be proved beyond a reasonable doubt, so that the jury might understand that, though the burden of proving acts of mitigation may devolve on the accused, it is sufficient for him to show facts which raise in the minds of the jury a reasonable doubt as to his guilt. But, so far as the record here shows, the court did not refer to the question of reasonable doubt in any portion of his charge. The only reference to that question found in the record is in an instruction asked by defendant which was refused, and properly so, because it did not state the law correctly."

In *Hogue* v. *State*, 194 Ark. 1089, 110 S. W. 2d 11, the identical instruction was given. In an opinion written by the late Justice Frank Smith, we said:

"It is argued that this instruction placed upon the defendant the burden of proving his innocence, inasmuch as he admitted the killing. Such, however, is not the effect of the instruction when read in connection with instruction No. 11, given by the court, reading as follows: 'Under the law the defendant is presumed to be innocent. This presumption is evidence in his behalf and protects him from a conviction at your hands until his guilt is established to your satisfaction beyond a reasonable doubt.' "

In the instant case, the jury was instructed that appellant started out in the trial with the presumption of in-

nocence in his favor, and that such presumption "follows him throughout the trial", and until they were convinced of his guilt beyond a reasonable doubt.

It is contended that the court committed error in giving State's Instruction No. 10 as amended. As given, the instruction read as follows:

"Although you may believe that the defendant fired the first shot in necessary self-defense, still, if you believe that the second shot was fired at a time when it was not necessary to further defend himself, then the defendant would be guilty of murder in the first degree, or murder in the second degree, or manslaughter, provided you believe that the second or third shot contributed in any manner to the death of deceased."

Appellant asserts that the proof did not support that part of the instruction dealing with the second and third shots, for all the evidence in the record shows that Isaacs had his pistol in his hand at the time the last two shots were fired. Appellant also points out that though nothing was said in the first part of the instruction about the third shot being fired in self defense, the jury was told that if the third shot contributed to the death of deceased, appellant would be guilty of some degree of homicide. While the instruction is somewhat awkwardly worded, and probably should have referred to "subsequent" shots rather than "second" and "third", we do not agree that this instruction was prejudicial. The proof was conflicting, even the State's witnesses disagreeing as to the manner in which the shots were fired. According to one witness, they were fired in quick succession; according to another, there was a short pause after the first shot. Proof was offered to the effect that Isaacs was perceptibly staggered after the first shot, and it was a question for the jury whether the subsequent shots were necessary. Likewise, the gun was found under the body with the safety unreleased. We here point out that the credibility of a witness is a matter to be determined solely by the jury. The members of a jury are not required to believe the testimony of any witness — it is within their province

to accept all of his testimony — reject all of his testimony — or accept part and reject part — and though the witness Davis testified that deceased had the gun in his hand at the time of the firing of the second and third shots, the jury was not bound to accept such testimony at face value. Of course, since the testimony reflected that any of the shots could have proved fatal the jury might well have resolved the issue on the basis of the first shot. Nor do we find merit in the last part of the objection. Juries are composed of intelligent people, and we cannot conceive that this jury was under the impression that appellant must be found guilty of some degree of homicide if the third shot contributed in any manner to the death of the deceased, even though it was fired in self defense. The omission of the "third shot" in the first part of the instruction was evidently an oversight, which would have been corrected if called to the court's attention. No specific objection was made upon this particular point, the objection relating only to the instruction including any reference to shots fired after the first.

Other alleged errors are set out in the Motion for New Trial, including the giving of certain instructions requested by the State, and the failure to give various instructions requested by the defendant. We have examined each alleged error in the Motion for New Trial, and find appellant's contentions to be without merit.

No reversible error appearing, the judgment is affirmed.

ROBINSON, J., not participating.