Covey *v.* State.

4976                                    334 S. W. 2d 648

Opinion delivered April 18, 1960.

*Shaver, Tackett & Jones,* for appellant.

*Bruce Bennett,* Atty. General by *John T. Haskins,* Asst. Atty. General, for appellee.

Sam Robinson, Associate Justice.   The appellant, Larry Covey, was charged with murder in the first degree in the killing of Wilbur Short.   He was convicted of voluntary manslaughter and his punishment fixed at four years in the penitentiary.   Appellant admits the

killing but contends that he acted in self-defense. Ark. Stats. § 41-2231 provides: ''Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors by violence or surprise, to commit a known felony.'' Section 41-2236 provides: ''In ordinary cases of one person killing another in self-defense, it must appear that the danger was so urgent and pressing, that in order to save his own life, or to prevent his receiving great bodily injury, the killing of the other was necessary, and it must appear also that the person killed was the assailant, or, that the slayer had really and in good faith, endeavored to decline any further contest, before the mortal blow or injury was given.''

On appeal Covey stoutly maintains that there is no substantial evidence to support the verdict. He is 21 years of age and had been having trouble over a period of months with one Denzil Jones. Covey testified that he had been accused by Jones of causing Jones' wife to leave him; that he and Jones had engaged in six or eight fights, and in the last fight with Jones he (Covey) was knocked in the head and had to go to a hospital for treatment; that Jones had offered a reward of $100 to anyone who would kill or ''scar'' Covey. Appellant testified that the last time Jones beat him up, the matter was in municipal court and Jones was fined for the act, and that later he, appellant, obtained a .22 caliber pistol and carried it for his protection.

It appears that on the night of the homicide, at a drive-in known as Lacey's No. 2, appellant got out of his car to speak to his cousin. At that time he was called by one Sonny Jackson and the two of them went into the restroom. Jackson told Covey that Wilbur Short was present at the drive-in; that he was drunk and crazy and had made threats against appellant. The testimony of Jackson, who was called as a witness by the State, and that of Covey is in accord in some respects; in others, it is in sharp conflict as to just what occurred and what was said in the restroom. Jackson warned Covey

against Short and endeavored to get Covey to leave the drive-in and thereby avoid Short. Covey stated that he knew Short only by sight and could not believe that Short would want to cause him any harm, but according to Jackson's version he explained that Short was then the boy friend of Jackson's ex-wife, and that Short had stated that Covey had taken the girl on an automobile ride and had caused her to walk home. Covey contends that Jackson finally stated that Short's ill feeling toward Covey was due to the influence of Denzil Jones, who was a friend of Short's. While in the washroom Jackson exhibited to Covey what Jackson says was Short's pistol, which Short had turned over to him a little earlier that night. Jackson did not state, however, that he told Covey it was Short's pistol. Covey says that the pistol Jackson exhibited to him was only an imitation pistol and not a real firearm at all; that Jackson made the remark to Covey "you know how that gang fights," implying that it was with weapons rather than just mere fair fist fighting. In any event, the two agreed that they would leave the washroom by Jackson going in front and if Short was near the door Covey would push Jackson into Short, thereby giving Covey an opportunity to run. But Covey says that upon leaving the washroom and seeing that Short was there, Jackson stepped aside, giving Short an opportunity to attack Covey. The most important facts in the case are the actions of the parties that followed immediately. Short ran at Covey and struck him with his fist and stepped back a couple of steps. Covey was not knocked down, but he also stepped back a couple of steps. Covey says that Short struck him with his left fist and had a pistol in his right hand. Jackson says that Short had nothing in his hand; that when he stepped back after striking Covey he assumed an "open boxing stance." Covey had his pistol in his right-hand pocket; he immediately pulled it and shot Short twice, killing him.

It is impractical to set out here an abstract of all the evidence in the case. The record is rather large and numerous witnesses testified. If Covey's testimony was true, it would be hard for anyone to say that he was not

acting in self-defense in slaying his assailant. But on the other hand, if Short had merely struck Covey with his fist and stepped back, assuming the pose of a boxer, ready to engage in a fair fist fight, and in those circumstances Covey shot him down, it cannot be said that the facts do not sustain the conviction of voluntary manslaughter.

"Manslaughter must be voluntary, upon a sudden heat of passion, caused by a provocation, apparently sufficient to make the passion irresistible." Ark. Stats. § 41-2208. There was considerable other evidence in the case from which inferences could be drawn as to who was telling the truth, and undoubtedly the jury would have been completely justified in acquitting the defendant if they had believed his version of the killing. The jury had the opportunity to observe all the witnesses and their demeanors on the stand, and was therefore in a much better position than is this Court to judge the credibility of the witnesses.

Jerry Spencer was present at the time of the killing. He was called as a witness by the State and the prosecuting attorney asked him the following question concerning what the deceased said, if anything, immediately after the shooting: "Did you hear this person say anything? A. Seems like he said something like 'Please don't shoot me again', or —" The attorney for the defendant objected. The Court said: "The objection is well taken, because the witness said 'It seems like he said'. (To the witness) We can go into what it seemed like or what you guess he might have said. If you know what he said, you may so testify."

"Witness: I don't know his exact words, but it was something to that effect.

Q. To what effect?

A. To the effect of 'Please don't shoot me any more.'"

The defendant objected.

"The Court: This man is not a professional witness. I don't imagine you have testified too much before, have you, Jerry?

"Witness: No, this is the first time I've ever been here.

The Court: (To witness) Of course, you cannot testify as to any impression you might have gotten of what anyone has said. If you can remember his exact words, that is the best. If you cannot remember his exact words, but you definitely remember the approximate words spoken, then you may so state, but you cannot give an impression of what he said.

Witness: Well, that was approximately what he said."

The defendant made his objections and saved his exceptions, but no objections were made to the remarks of the court as such.

Of course, a witness cannot state his impressions, conclusions, inferences, suppositions or understanding of a matter unless such answer is equivalent to a statement of the fact asked for, but witnesses are not required to give their testimony with absolute positiveness. A witness who is not positive may make a statement of a fact to the best of his recollection or belief and his testimoney should not be excluded because he uses "it is my impression", "I think", or a similar expression where he means that he is testifying to the best of his recollection or an indistinct remembrance of facts within her personal knowledge. 98 C. J. S. 79. It appears that although Spencer may not have remembered the exact words spoken by the deceased, he stated what was said approximately, as he remembered it.

Appellant contends that the court erred in allowing him to be impeached on a collateral matter brought out on cross-examination, and if this were the case, it would be error. *Everett* v. *State,* 231 Ark. 880, 333 S. W. 2d 233. But appellant asserts here and contended at his trial in circuit court that his trouble with Short grew out of appel-

lant's difficulty with Denzil Jones. There was testimony from which the jury could have drawn the inference that Jones had paid Short $100 to harm Covey. Although Covey was not questioned on direct examination about a fight he had with Denzil Jones at Spero's Drive-in a few months before the killing, on cross-examination the prosecuting attorney asked him questions apparently calculated to establish that insofar as Covey's trouble with Jones was concerned Covey was the aggressor. On the occasion at Spero's Covey was in a car with Buford Hester. It was shown by cross-examination of Covey that before the fight with Jones started, Covey had made a phone call. He testified that it was to a young lady at Hooks, Texas. He was asked if, after making the call and returning to the car, he did not say to Buford Hester "he will be here in a minute." Appellant denied making the statement. He was also asked if he did not make the further statement "I am going to make him put up or shut up," and appellant denied making that statement. It was shown that Covey's father arrived at the scene and appellant was asked if he did not make the statement to Hester that appellant's father had hit him by mistake. Appellant denied making this statement.

Buford Hester was called by the State and testified that Covey did make the statement "he will be here in a minute", and also the other statement to the effect that he was going to make him "put up or shut up", and that Covey's father must have hit him by mistake. The implication of this impeaching testimony is that Covey called his father in anticipation of starting a fight with Jones. Appellant blames the killing on Jones and contends that he was wrongfully assaulted by Jones on more than one occasion and that Jones instigated this trouble and caused Short to make the attack upon Covey. In these circumstances we do not believe that it can be said that the State impeached appellant on a collateral matter. *Harris* v. *State,* 175 Ark. 1166, 2 S. W. 2d 66.

The court gave instruction No. 8 as follows:

"You are instructed that evidence is of two kinds, namely: direct or positive and circumstantial, and that any fact in the case or any element of the crime charged, may be proven by either kind or by both kinds of evidence; and if any fact in this case, or any element necessary to constitute the crime has been established by direct or circumstantial evidence, or by both kinds, then such fact or element has been sufficiently proved, and if upon a consideration of all the facts proven in the case you believe beyond a reasonable doubt, that the defendant is guilty of a crime it is your duty to so find."

Appellant says that no instruction on circumstantial evidence should have been given to the jury. We do not agree. There was a good deal of circumstantial evidence in the case. Much of this kind of evidence was in regard to whether Short was armed with a pistol at the time of the killing.

Appellant also complains of that part of instruction No. 10 wherein the court told the jury: "The killing being proved, the burden of proving circumstances of mitigation that justify or excuse the homicide shall devolve on the accused, unless the proof on the part of the State is sufficiently manifest that the offense amounted only to manslaughter, or that the accused was justified or excused in committing the homicide." This was not error. The instruction is in the language of the statute (Ark. Stat. § 41-2246) and a similar instruction was approved in *Brown* v. *State*, 231 Ark. 363, 329 S. W. 2d 521.

Other assignments of error are argued, all of which we have examined carefully, but we find no error.

Affirmed.