EMERY BERRYMAN BAGLEY *v.* THE STATE OF ARKANSAS

5424                                    444 S. W. 2d 567

Opinion delivered September 25, 1969

*Harold Sharpe* and *Henry Wilkinson,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

LYLE BROWN, Justice. Appellant Emery Berryman Bagley was convicted of first degree murder and sentenced to death. Bagley and a companion hitchhiked a ride out of Memphis, Tennessee, and their benefactor was fatally shot as the three men drove through St. Francis County. Two written confessions of Bagley were introduced at his trial, both of which implicated him. The State's evidence was clearly sufficient to sustain a first degree murder conviction. However, there were errors committed by the trial court which call for reversal. We shall discuss those errors and, because of the probability of a new trial, comment on most of the other points advanced by appellant.

The court examined the jury on voir dire but first explained the nature of the charge, the degrees of homicide, and the punishment. Comment was made on the nature of the punishment for first degree murder in these words:

> The law fixes the punishment at death by electrocution unless the jury finds that there are extenuating circumstances which would justify life imprisonment instead of the death penalty. If the jury does not find extenuating circumstances it simply returns a verdict of guilty of murder in the first degree, and then the law requires that the court pronounce the sentence. If the jury finds extenuating circumstances they will return a verdict of guilty and fix the punishment at life imprisonment in the State Penitentiary.

Bagley's counsel timely objected (in chambers) to the statement as being a prejudicial misstatement of the law and requested that the court correct it in the presence of the jury. The court, in denying the request, took the position that its formal instructions which would follow the testimony would leave no doubt with the jury that it could "certainly return any verdict they see fit."

The court told the jury that if the defendant was guilty of first degree murder the punishment was death by electrocution *unless* the jury found extenuating circumstances which would justify the substitution of a penalty of life imprisonment. Ark. Stat. Ann. § 43-2153 (Repl. 1964) says the jury "shall have the right" in all capital cases to fix punishment at life imprisonment instead of death. The statute contains no such words or phrases as "discretion" or "extenuating circumstances." When the Legislature created two forms of punishment for first degree murder it did not create two grades of the offense; it merely created a choice of punishment, that choice to be made by the jury. The only

responsibility imposed on the court is that the jury is to be advised of its duty to select which of the punishments shall be imposed. When the court so advises the jury it "has exhausted its powers in the premises, and any attempt on its part to go further and inform the jury that under certain circumstances it might impose death and under others life imprisonment would in effect usurp the prerogatives of the jury and be wholly improper." *Hernandez* v. *State*, 32 P. 2d 18 (1934).

The State argues that if the trial court's remarks were erroneous, it is not shown that those members of the panel who heard the remarks actually sat on the jury. We concede that it cannot be determined with certainty just which jurors heard the remarks but it is clear to us, after careful perusal of the record, that a majority of the jurors who tried the case heard the court's statement about extenuating circumstances.

Additionally the State contends that any error was cured when the court explained the forms of verdicts and advised the jury to fill in the blanks as the jury saw fit. We cannot agree. The damage could have been removed only by an equally positive statement of correction. The court's statement that extenuating circumstances must be produced to avoid the death penalty was clear and unequivocal; only a corrected statement of equal stature could have erased it.

Appellant contends that the court and prosecuting attorney, to appellant's prejudice, propounded an unnecessary number of inquiries to prospective jurors concerning their views on capital punishment. We cannot say the court abused its discretion. Some repetition was necessary because the first list of jurors was exhausted and additional jurors were necessarily called. Had the proper objection been made it is possible that the court would have reduced to some extent the number of repetitions. The attitude of the jurors toward capital punishment was needed for two purposes. First

there were the challenges for cause, based on the decision in *Witherspoon* v. *Illinois,* 391 U. S. 510 (1968). On the basis of *Witherspoon,* those jurors who would not consider returning a verdict of death could be removed for cause. Secondly, there was the responsibility of the prosecuting attorney for wisely making peremptory challenges. To so act he would naturally need to identify those jurors who had conscientious or religious scruples against the death penalty. Although *Witherspoon* held that such general objections to the extreme penalty were not grounds for challenging for cause, it certainly did not restrict the prosecutor in considering those factors in evaluating his peremptory challenges.

The widow of the victim testified that at the time of her husband's death she was pregnant and suffering from pneumonia. Appellant argues that the testimony was irrelevant and prejudicial. Clearly that testimony would only serve to arouse the sympathy of the jury. We suggest that it be avoided on retrial.

In one of the instructions the trial court read to the jury Ark. Stat. Ann. § 41-2246 (Repl. 1964) :

> Burden of Proof.—The killing being proved, the burden of proving circumstances of mitigation, that justify or excuse the homicide, shall devolve on the accused, unless by the proof on the part of the prosecution it is sufficiently manifest, that the offense committed only amounted to manslaughter, or that the accused was justified or excused in committing the homicide.

The giving of that instruction is asserted as error which allegedly calls for a new trial. The statute has been held to be applicable only where there is a claim of self-defense. Where the instruction is given in other cases we have said it is only a statement of an abstract proposition of law and *may* be harmless error. *Wilson* v. *State,* 126 Ark. 354, 190 S. W. 441 (1916); *Easter* v.

*State,* 96 Ark. 629, 132 S. W. 924 (1910). We have also held that when an instruction based on § 41-2246 is accompanied by an instruction on presumption of innocence which goes with the defendant throughout the trial unless overcome beyond a reasonable doubt, any error in the reading of § 41-2246 is harmless. *Brown* v. *State,* 231 Ark. 363, 329 S. W. 2d 521 (1959). Yet, each case is governed by its own record and the law applicable to that record. The case before us is different in essential respects from the cited cases and the many other precedents concerning the application of § 41-2246. Here is the record upon which our disposition of appellant's challenge is based:

It is important to note that Bagley was charged with a willful, premeditated, and deliberate killing, as opposed to a charge of murder while in the perpetration of robbery; had the latter charge been filed there could have been only the highest degree of homicide involved. No witnesses were called in Bagley's behalf. Before the court read § 41-2246 to the jury, Bagley's counsel objected (1) that the killing was admitted and there was no contention of mitigating circumstances, and (2) the instruction "amounts to a comment on the fact that the defendant has not testified in this case." Under further instructions of the court, the jury was privileged to find Bagley guilty of first degree murder, second degree murder, or manslaughter. Since Bagley called no witness the instruction could have discouraged the jury from considering a verdict less than that of first degree murder. That was because the jury was told the defendant had a duty to come forward with proof of mitigating circumstances. Since Bagley stood silent, as of course he had a right to do, the jury could have given damaging weight to his inaction.

Appellant next attacks the constitutionality of two of our statutes, Ark. Stat. Ann. § 41-2227 and § 43-2154 (Repl. 1964). Respectively those statutes fix the death penalty for first degree murder and establish an

alternate penalty of life imprisonment. It is argued (a) that the death penalty is allowed to be imposed by the jury without any guidelines and (b) that the jury which fixes guilt determines the punishment at the same time. Identical challenges to Arkansas law were raised in *Maxwell* v. *Bishop,* 398 F. 2d 138 (1968). The arguments were rejected by a unanimous court and we agree. Also, see *Spencer* v. *Texas,* 385 U. S. 554 (1967) for that court's comment on two-part jury trials.

In his closing argument the prosecuting attorney discussed capital punishment as a deterrent to others similarly inclined. Defendant's attorney contends he was improperly denied appropriate rebuttal when he was told he could not refer to certain statistics which he contended proved the death penalty was not a deterrent. We cannot say the trial court abused its discretion in that respect in that the statistics were not in the record nor were they asserted to be a matter of common knowledge. Furthermore, the defense attorney immediately argued the same point by a different approach and without objection.

Other points for reversal which are argued are without merit and a discussion of them would serve no useful purpose. We have examined other objections made in the record but not argued and find no error. The record does reveal one incident which requires comment because of a probable new trial. In the course of its deliberations the jury inquired "as to the minimum time that a man would have to serve if he was sentenced to a life sentence in prison." The court explained that the question could not be answered because of the recent enactment of what was considered a complex new law difficult of interpretation; and because no statistics had yet been made available based on the new law. It would not have been improper for the trial court to respond to the question by an explanation of the *law* applicable to paroles; but the giving of *statistics* on the subject to the jury resulted in a reversal in *Bell* v. *State,* 223 Ark. 304, 265 S. W. 2d 709 (1954).

It is our conclusion that the case must be reversed and remanded for new trial. We are well aware of those many instances in homicide cases wherein error has been corrected either by reducing the punishment or by entering a conviction for a lesser degree of the charged offense; but there are two reasons which, when combined, preclude those alternatives. First, the evidence here would clearly support a conviction of first degree murder; and second, the error in giving an instruction based on § 41-2246 could well have influenced the jury to return the recorded verdict in lieu of a conviction for a lesser degree of homicide.

Reversed and remanded.

HOLT, J., not participating.