ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* RAINES.

Opinion delivered May 10, 1909.

1. RAILROADS—DUTY TO TRESPASSER ON TRACK.—When trainmen see a person on the track in front of the train, either insensible to his danger or unable to avoid it, and fail to use a proper degree of care to avoid injuring him, the railroad company will be liable for his injuries. (Page 403.)

2. SAME—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—Where there was testimony tending to show that defendant's employees discovered deceased's peril when the train was 200 yards from him, and that the train could have been stopped within 60 yards, but was not stopped, a finding that the railroad company was negligent will be sustained. (Page 403.)

3. WITNESSES—CROSS EXAMINATION.—A party has no right to cross ex-
amine any witness except as to facts and circumstances connected
with the matters stated in his direct examination; if he wishes to ex-
amine him as to other matters, he must do so by making the witness
his own and calling him as such in the subsequent progress of the
cause. (Page 404.)

4. SAME—REFUSAL TO PERMIT CROSS-EXAMINATION—PREJUDICE.—If it was
error to refuse to permit appellant to cross-examine appellee's wit-
ness touching matters not connected with his direct examination, such
error was not prejudicial where appellant made him his witness and
fully examined him concerning such matters. (Page 406.)

5. APPEAL AND ERROR—SUFFICIENCY OF ABSTRACT.—Whether the trial court
erred in giving an instruction will not be considered if appellant neg-
lects to set out the instruction in his abstract. (Page 406.)

6. TRIAL—IMPROPER ARGUMENT.—If it was prejudicial error to permit the
attorney for the plaintiff in an action against a railroad company to
say in his argument concerning one of defendant's witnesses: "He
was bound to tell it that way, and if he did not he would not hold his
job 15 minutes," such prejudice was removed where the court in the
presence of the jury sustained an objection to the argument. (Page
406.)

7. DAMAGES FOR DEATH — EXCESSIVENESS.—Where the evidence showed
that decedent had a life expectancy of 23 years, and was contribut-
ing to the benefit of his wife and children between $700 and $900 per
year, a verdict awarding them $5,000 was not excessive. (Page 407.)

Appeal from Hot Spring Circuit Court; *William H. Evans,*
Judge; affirmed.

*E. B. Kinsworthy* and *Lewis Rhoton,* for appellant.

1. Following the American rule, the matters which go to
prove the opposite party's *prima facie* case, as made up by his
witnesses, may properly be gone into on cross examination. 7
Nev. 385; 9 So. Dak. 301; 133 Cal. 285; *Reece v. Bell,* 138 Cal.
And it was proper to permit a full cross examination regarding
the subject-matter of the examination in chief in the light of all
its bearings. 74 Vt. 331; 73 Conn. 743; 115 Ia. 48; 92 Md. 483;
26 Ind. App. 307; 53 Atl. (Md.) 720; 52 Conn. 818; 43 W. Va.
196; 175 Pa. St. 361; 25 Wash. 518. All matters connected with
and a part of the *res gestae* of the facts testified to in chief
are properly within the limits of cross examination, as also facts
closely connected with the main fact. 48 Pa. St. 396; 33 Mich.
319; 124 Cal. 452; 97 Ala. 187. Under the limited rule urged
by appellee, it is held that where a witness on direct examination

gives only a portion of a material transaction he may be cross examined in full detail concerning the omitted portion. 91 Fed. 614; 206 Pa. St. 135; 142 U. S. 488; 110 U. S. 47; 42 Ill. App. 225; 112 Ind. 494; 28 Ore. 1. See also 9 Mich. 381; 37 Ill. 465 89 Ala. 563; 94 Mich. 343; 69 Fed. 808; 83 Md. 536; 70 Ark. 420; 56 Ark. 550.

2. Giving the appellee's evidence its strongest probative force, it is nowise stronger than that on the first trial, of which this court on appeal said that the testimony fails to show that the man was discovered on the track by the engineer in time to avoid the injury. 86 Ark. 306. It is admitted that deceased was a trespasser, and the burden was on appellee to prove that he was discovered on the track and that appellant's employees, after such discovery, had time to avoid the injury by the exercise of ordinary care. *Id.* 295; 82 Ark. 522; 69 Ark. 380-382; 65 Ark. 233; 62 Ark. 235; 36 Ark. 371; 45 Ark. 250; 48 Ark. 497; 49 Ark. 257; 64 Ark. 364; 36 Ark. 46.

3. The fourth instruction, which told the jury to take into consideration the advantages and benefits in the way of moral and intellectual training, if any, they might believe from the evidence deceased's children would have received from him if his death had not occurred, is erroneous because there is no evidence to support it. 69 Ark. 384; 52 Ill. 290; 69 Ill. 426.

4. The language used by appellee's attorney in his argument, viz.: "Bill Coyne was bound to tell it that way, and if he did not he would not hold his job 15 minutes;" and further, "Do you believe a railway company would keep a man 30 years who was hostile to them, and would go on the witness stand and give evidence against them?"—was prejudicial and reversible error. 71 Ark. 435; 63 Ark. 174; 70 Ark. 335.

*H. B. Means,* for appellee.

1. A defendant in an action cannot bring in his defense under the guise of cross examination, but must either wait until he has opened his case or introduce his defense as his testimony in chief. 100 U. S. 625; 14 Pet. 448; 1 Wall. 702; 1 Greenleaf, Ev. § § 445-447; 1 Wharton, Ev. § 529; McKelvey, Ev. § 246; 175 Pa. St. 361; 66 Barb. (N. Y.) 527; 83 N. Y. 436. See also 14 Ark. 555; 77 Cal. 324; 23 Col. 456; 70 Conn. 76; 38 Fla. 169; 173 Ill. 553; 110 Ind. 390; 113 Ia. 16; 36 Kan. 754; 56

Md. 439; 54 Neb. 109; 35 Ill. 486. The latitude to be allowed on cross examination is largely within the discretion of the trial court, and a case will not be reversed on that account unless such discretion is greatly abused. 97 Ala. 682; 174 U. S. 727; 142 Ind. 55; 61 Ia. 28; 54 Atl. (Md.) 88; 60 Neb. 531; 52 Pa. 531; 5 Wash. 613; 73 Wis. 147. Where it is sought to cross examine a witness, and objection thereto is sustained, if the witness is afterwards asked and answers the same questions which were before refused, such refusal is not ground for reversal. 60 Neb. 531; 41 Ore. 151.

2. The evidence establishes the facts that at the time the engineer blew the alarm whistle he realized Raines's peril, that he had ample time and space in which, by the exercise of ordinary care, to stop the train and avoid the injury, and that he exercised no such care. It was, therefore, sufficient to sustain the verdict. 97 S. W. 1067, 1069; 74 Ark. 479; 69 Ark. 383; 46 Ark. 523; 50 Ark. 477; 74 Ark. 407; 74 Ark. 478.

3. The court sustained appellant's objection to the argument of appellee's counsel, and disapproved of it. Nevertheless, Coyne having materially changed his testimony, it was a subject of legitimate criticism.

FRAUENTHAL, J. On June 16, 1907, J. E. Raines attempted to cross the defendant's railway track at a stockguard located about one-half mile from its station, Gifford; and his foot got caught in the stockguard, so that he could not extricate it, and he was run over and killed by defendant's passenger train. The plaintiff, as the administrator of his estate, instituted this suit for the benefit of his widow and next of kin for the sum of $10,000 damages.

There was a former trial of the case in the circuit court, which resulted in a judgment in favor of the plaintiff; and the defendant took an appeal therefrom to this court. Upon that appeal the judgment was reversed by this court, and the cause remanded for a new trial. The opinion delivered on that appeal is reported in 86 Ark. 306 (*St. Louis, I. M. & S. Ry. Co.* v *Raines*). Upon the second trial of this case in the circuit court a verdict was returned in favor of plaintiff for $5,000, and from the judgment rendered thereon defendant prosecutes this second appeal.

It is urged by the defendant that the evidence is not sufficient to sustain the verdict. In the consideration of this question we must give to the testimony in favor of the plaintiff its strongest probative force and apply that to the law of cases of this character. The evidence tended to prove that plaintiff's intestate attempted to cross the defendant's railway track at a stockguard, and in doing so his foot got caught therein; and either in endeavoring to extricate his foot, or otherwise, he fell, so that he was lying on the track with his body between and nearly parallel with the rails. The defendant's passenger train had stopped at Gifford, about one-half mile from the cattle guard, and after leaving that station was going at a rate of speed, when near the cattle guard, of from 25 to 35 miles an hour.

The engineer testified that he discovered an object on the track, and in a moment was impressed that it was a man and immediately blew the whistle and put on brakes.

On this trial he said he was not over 200 feet or 100 yards away when he discovered it was a man. On the former trial he said he was between 100 yards and 200 yards away when he discovered it was a man. He was further asked by plaintiff's counsel if he saw any object about the track, and he replied that in giving evidence as to that he would first have to see what he said at the coroner's inquest. He finally said he did see an object, and was impressed that it was a man, just beyond the cattle guard near the track. He testified that he blew the whistle as soon as he saw the object on the track, and he also testified that he put on brakes when he first saw the object on the track. The train was 60 yards in length, and after striking Raines ran the full length of the train before it stopped.

No other witness testified to seeing deceased as the train struck him; a number of witnesses saw the train at the time the engineer blew the first whistle just before the train ran over Raines. Three witnesses testified that they saw the train at the time the danger blast of the whistle was thus given; they were at different places, but they saw the train, noticed it when this alarm whistle sounded, located the train at that time by the objects by the side of the road, and afterwards measured the distance to the cattle guard; and the distance as testified to by them was from 202 to 260 yards. These witnesses were situated so

that they could and did see the train at that time; and their testimony was sufficiently definite and certain as to these facts. An engineer of many years' experience testified that the passenger train, at the rate of speed it was going on this occasion, could, by the exercise of ordinary care, have been stopped in a train's length, or in a distance of 60 yards.

It is true in this case that Raines was a trespasser upon defendant's track; but still under the law the defendant owed him a duty. That duty this court has repeatedly stated. When the employee of a railroad company discovers the perilous situation of a trespasser upon its track, he must, after such discovery, use a proper degree of care to avoid injuring him. "If the employees in charge of the train see a man walking upon the track at a distance ahead sufficient to enable him to get out of the way before the train reaches him," they have the right to rely on human experience and to presume that he will get out of the way, and so need not check the train.

"If, however, the man seen upon the track is known to be, or from his appearance gives them good reason to believe that he is, insane, or badly intoxicated, or otherwise insensible of danger, or unable to avoid it, they have no right to presume that he will get out of the way, but should act upon the hypothesis that he might not or would not, and should use a proper degree of care to avoid injuring or killing him. Failing in this, the railroad company would be responsible for damages if by the use of such care, after becoming aware of his negligence, they could have avoided injuring him." *St. Louis, I. M. & S. Ry. Co.* v. *Wilkerson,* 46 Ark. 513; *Sibley* v. *Ratliffe,* 50 Ark. 477; *St. Louis & S. F. Rd. Co.* v. *Townsend,* 69 Ark. 380; *St. Louis, I. M. & S. Ry. Co.* v. *Hill,* 74 Ark. 478; *St. Louis S. W. Ry. Co.* v. *Thompson,* 89 Ark. 496.

Now, in this case the first question to determine is at what time, or rather at what place, was the train when the engineer discovered the perilous situation of the deceased on the track. The engineer says that immediately on seeing the object on the track he blew the whistle, and that he was impressed that it was a man. He further testified that immediately upon seeing the object on the track he put on the brakes. Now, he put on brakes

St. Louis, I. M. & S. Ry. Co. v. Raines. [90

because he then discovered the perilous and dangerous situation of the object or man, and so he tried to stop the train; that was the moment he realized and appreciated the peril of the man on the track; and that was at the moment he blew the whistle. Now, at the time he blew the whistle there was sufficient evidence to sustain a finding that he was 202 to 260 yards distant from the cattle guard; and therefore the jury were justified in finding from the evidence that the engineer did discover the perilous situation of Raines on the track at a distance of from 202 to 260 yards. The discovery of the perilous situation of Raines at that time is further borne out by the testimony of the engineer when he says that he was impressed that the object was a man when he saw it at the time he blew the whistle, and that he noticed that the man was lying on the track, thus indicating the inability of the man to avoid the injury. From the testimony the jury could have found that by the use of the appliances at hand, by the use of a proper degree of care, the engineer could have stopped the train at the speed at which it was going in a distance of 60 yards. The jury were therefore justified in finding from the evidence that, after the discovery of the perilous and dangerous situation of the plaintiff's intestate on the track by the engineer of the train, he could, by the exercise of a proper degree of care, have stopped the train before striking Raines. There was sufficient evidence to sustain that view of the case; and we therefore cannot say that there is not sufficient evidence to sustain the verdict. *Houston & T. C. Ry.* v. *Ramsey*, 97 S. W. 1067.

Upon the trial of the case the plaintiff called as its witness William Coyne, the engineer, and proved by him that he was the engineer on the train; that he sounded the alarm whistle, and that the train ran over and killed Raines. The plaintiff proved nothing further by this witness and asked no questions of him as to any other matter. The defendant, upon cross-examination, asked the witness what else he did besides sounding the alarm whistle; when he discovered that it was a man, what did he then do; after he discovered it was a man whether he did everything he could to stop the train; and a number of questions tending to prove the defense of using a proper degree of care after the discovery of the man on the track. Objection was made by plaintiff

to these questions, and the court sustained the same on the ground that defendant upon cross-examination could only ask questions relative to the matters elicited by the plaintiff; and that, if defendant desired to prove by this witness facts tending to establish its said defense, it should make him its own witness. The defendant urges as an error this refusal to permit defendant to so cross-examine this witness. But immediately thereafter, and before this witness left the stand, the defendant did ask of the witness all these questions, to which answers were made; and did fully examine the witness on every phase of the defense.

Upon the question of the scope of the cross-examination of a witness the authorities are greatly divided. The question that thus arises is whether the opponent may upon cross-examination elicit from the witness facts that constitute part of the opponent's case, or whether he is confined to the matters that were brought out or elicited upon the direct examination.

The rule that prevails in the Federal courts is thus stated by Story, J., in the case of *Philadelphia & T. R. Co.* v. *Stimpson,* 14 Pet. 448 (461): "A party has no right to cross-examine any witness except as to facts and circumstances connected with the matters stated in his direct examination. If he wishes to examine him as to other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the cause." *Wills* v. *Russell,* 100 U. S. 625; *Davis* v. *Coblens,* 174 U. S. 727; 3 Wigmore on Evidence, § 1885; 1 Greenleaf on Evidence, § 445.

This Federal rule has been followed by a majority of the courts in America. In the case of *Austin* v. *State,* 14 Ark. 558 (563) it is said: "Upon an examination of the authorities we think that the decided preponderance in the American courts is in favor of confining the right of cross-examination to those facts. and circumstances only, connected with the matters actually stated in the direct examination of a witness; and that, if the cross-examining party wishes to examine the witness as to other matters, he must do so by making the witness his own, and calling him as such in the subsequent progress of the case." And in that case this rule is approved.

The other rule, denominated sometimes the orthodox rule, is maintained and followed by some of the ablest jurists and

courts of this country as well as of England. But the courts following either rule recognize the discretionary power of the trial court to allow variations from the customary order, and decline ordinarily to consider as an error any variation sanctioned by the trial court.

In this case there could not be any prejudicial error in this ruling because subsequently the defendant was permitted to ask of the witness, and the witness answered, all the qustions to which objections had previously been sustained.

It is true that Coyne, the engineer, was called by the plaintiff as her witness, and thus formally the plaintiff stood sponsor for his credibility. But he was the only person who saw the train strike and run over plaintiff's intestate, and so by necessity the plaintiff was forced to call him as her witness. If there was any act of negligence committed in running over Raines, it was the negligence of this engineer; so that his actual interest was obvious. Therefore, whether the testimony which the defendant desired to elicit from Coyne came by way of cross-examination of him as the witness of plaintiff or by direct examination as its own witness, it only affected formally his credibility; for at last his credibility as a witness was a question for the jury to determine under all the facts and circumstances of the case.

No error is urged here as to the giving or refusal of instructions, except on account of the giving of instruction number 4 on the part of plaintiff. This instruction is referred to in the brief, but is not set out in the abstract of appellant; for that reason, and because from the reference thereto in the brief we see no prejudicial error in the giving of this instruction, this exception cannot be sustained. *Shorter University* v. *Franklin,* 75 Ark. 571.

It is urged that the attorney of plaintiff made an improper argument to the jury by saying of the engineer and witness Coyne: "Bill Coyne was bound to tell it that way, and if he did not he would not hold his job 15 minutes." Objection was made to this character of argument, and the court at the time sustained the objection. Under these circumstances we do not think that any prejudicial error occurred from these remarks. We have frequently referred to the duty of the trial court to control the argument of counsel and to keep them within the

record and the legitimate scope of the privilege of counsel; but some reliance should be placed upon the sound judicial discretion of the trial judge. Counsel have the right to make criticisms of and comments on the interest of opposing witnesses; and when the testimony of such witnesses are in conflict with established facts or other evidence in the case, counsel should be permitted, within the scope of legitimate argument, to refer to the interest, if any, which such witnesses may have in the result of the trial.

In this case, even if it should be considered that the argument was not perfectly legitimate, we think that any prejudice therefrom was wholly dissipated by the court sustaining the objection to it in the presence and hearing of the jury.

It is urged that the verdict of the jury is excessive. Plaintiff's intestate was 46 years old, and left surviving him a widow and six children, to whose miantenance and support he was able and did contribute. Under the testimony the jury could have found that he earned and contributed to their support from $700 to $900 per annum. He had a life expectancy of 23 years. Under these circumstances, and from mathematical computation, we cannot say that $5,000 is an excessive valuation of the earning capacity and contributions of the plaintiff's intestate.

Finding no error, the judgment is affirmed.