Jimmy Lee DYAS v. STATE of Arkansas

CR 75-192                                     539 S.W. 2d 251

Opinion delivered July 19, 1976

304

Appellant, *Pro Se.*

*Jim Guy Tucker,* Atty. Gen., by: *Terry Kirkpatrick,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Jimmy Lee Dyas was convicted by a jury of capital felony murder for his part in the killing of Curtis Eugene Zachry, husband of Carolyn Dianne Zachry, who has likewise been convicted of the murder in a separate trial and whose appeal has earlier come

befo... ...e *Zachry* v. *State,* 260 Ark. 97, 538 S.W.
2d 2... ...eceived a sentence of life imprisonment
witho... ...this conviction and sentence Dyas took
his ori...

Foll... ...r from this court reinvesting the trial
court with... ...appellant filed a motion in the circuit
court of Li... ...unty for new trial on 6 January 1976.
The motion... ...ed and appellant has brought a
supplemental ... ...l told, appellant offers fifteen points
for reversal. n... ...h, we have concluded, merits rever-
sal. They are ... ... in the order in which they were
presented, the ... ...e being treated together for con-
venience. We wi... ...iew testimony except as it becomes
necessary to treat ... ...points because it is very similar to
the testimony sum... ...d in *Zachry* v. *State,* supra.

1

The Court Erred in Admitting Into Evidence
Statements Made By A Witness For The State, Before
The Jury, Identifying The Source Of Two Rings
Belonging To The Murder Victim, The Court And The
State Being Well Aware That The Rings Had Been
Turned Over To The Court And Law Enforcement Of-
ficials For The State By Appellant's Defense Attorneys.

2

The Court Erred In Allowing The Prosecuting Attorney
For The State To Comment Upon The Source Of The
Two Rings Belonging To The Murder Victim In Viola-
tion of Appellant's Attorney-Client Privilege.

3

The Court Erred In Admitting Into Evidence
Statements Made By A Witness For The State Concer-
ning The Alleged Source Of Two Rings Belonging To
The Murder Victim, Because The Statements
Constituted Hearsay.

The testimony upon which all of these points hang was

given during the state's redirect examination of Sgt. Carroll Page, who investigated the murder. However, the first mention of the rings was made by appellant's principal attorney during his cross-examination of Page. It came about thus:

> Q.   (Cont'd by Mr. Boyd Tackett, Sr.) Do you know of anything that I have done during your investigation since the 9th day of the month, since the 9th day of January that wasn't trying to cooperate with you and the other officers. Have I tried to keep anything from you?
>
> A.   You furnished some information. Some good and some ——
>
> Q.   I even brought you the two rings taken off the dead man, didn't I?
>
> A.   Yes, sir.
>
> Q.   MR. BOYD TACKETT, SR.: Judge, if this is wrong, you can tell me, and I will stop.
>
> THE COURT: Yes, sir.

He pursued the line of questioning despite the fact the items mentioned were not in evidence and finally drew an objection from the state. The record follows:

> Q.   (Cont'd by Mr. Boyd Tackett, Sr.) All right, there is evidence here that there was a key ring taken off the dead body and there was two diamond rings taken off the dead body. They've been introduced.
>
> MR. GEORGE STEEL, JR.: No, sir, they have not.
>
> MR. BOYD TACKETT, SR.: They have not?
>
> Q.   (Cont'd by Mr. Boyd Tackett, Sr.) Well, anyway, before it gets to that, there's testimony that there was a watch taken off the body. Have you ever found the watch?

MR. GEORGE STEEL, JR.: Judge, I submit that this is not proper cross examination. We haven't even gone into that yet,

THE COURT: He is making him his own witness, Mr. Steel. When he does that, he is bound by his answers.

MR. BOYD TACKETT, SR.: That's right, I am bound by his answers.

THE COURT: All right.

On redirect examination, Sgt. Page testified without objection to an explanation allegedly given him by Tackett about how he came into possession of the rings.

Q. I show you two diamond rings, Officer Page, and I ask you, sir, are those the rings that Mr. Tackett refers to that he gave to you, sir?

A. Yes, sir.

Q. And have you in the course of your investigation determined that those rings belonged to the deceased, Eugene Zachry?

A. I have, sir.

Q. I believe Mr. Tackett has stated that he turned those rings over to you, is that correct, sir?

A. That is true.

Q. When he did that, Officer Page, where did he say he obtained them?

A. From Jimmy Dyas' wife, Bunkie.

Q. Now, did he go any further than that, Officer Page? Did he say where she got them?

A. From a lock box — safety deposit box in the bank.

Q. Now, Sgt. Page, I ask you, sir, have you since that time attempted to determine of your own knowledge where the rings came from?

A. Yes, sir.

Q. Have you been able to determine anything different than what Mr. Tackett told you on the night he gave them to you?

A. I've been told a different story by Mr. Tackett — one or more different stories.

And, on recross-examination, appellant's attorney sought to elicit a different version of their exchange, as follows:

Q. Now, Carroll, I want you to remember something real close. When you asked me where I got those rings, didn't I tell you, "Carroll, I can't tell you that."

A. You did not, sir.

Q. I told you that I got them from Bunkie?

A. Yes, sir.

Q. Now, Carroll, don't you know I didn't tell you that?

A. Yes, you did, sir.

MR. GEORGE STEEL, JR.: Judge, if Mr. Tackett made Sgt. Page his witness for this purpose, I submit that he can't cross examine him.

MR. BOYD TACKETT, SR.: I submit I am entitled to get on that witness stand and tell the truth.

THE COURT: Not at this time, Mr. Tackett.

MR. BOYD TACKETT, SR.: I know.

Q. (Cont'd by Mr. Boyd Tackett, Sr.) I gave you those rings, and when I handed you those rings, I was in the hall with J. O. Moore present, didn't you ask me where those rings came from and I said, "Carroll, I can't tell you, I represent three people."

A. You told me this at Judge Steel's house, sir.

Q. Well, I know that, but I didn't tell you that at Judge Steel's house. I told you that at the jailhouse, didn't I?

A. No, sir.

Q. When I handed you those rings after I identified them through Dianne that those were Eugene's rings, didn't you turn around and say, "Boyd, where did you get those rings"? And I said, "Carroll, I can't tell you"?

A. Actually, I received the rings at Judge Steel's house and had them in my possession, handed them to you when we went into the jail and you showed them to Dianne and then you handed them back to me. I signed a receipt for them at Judge Steel's house at which time you told me that you got them from Mrs. Dyas.

In support of his first point for reversal appellant seeks to analogize the case of *State* v. *Olwell*, 64 Wash. 2d 828, 394 P. 2d 681, 16 ALR 3d 1021 (1964), wherein the court decided that, where an attorney must and does surrender evidence to be used in the prosecution of his client, and the state attempts to introduce such evidence, it should take precautions to make certain the source of the evidence is not disclosed to the jury where it is within the protection of the attorney-client privilege. But, to be protected as a privileged communication, the court concluded, information or objects acquired must have been communicated or delivered to the attorney by his client and not merely obtained by the attorney while acting on behalf of his client, for if the evidence, in *Olwell* a knife, were obtained from a third person with whom there was no attorney-client relationship, the communication would not be privileged. Thus, according to *Olwell*, the privilege applies only to evidence if it is received by the attorney from his client

and, if this is the case, the concern is that the immediate source of the evidence be held in confidence.

Page's testimony indicated that Attorney Tackett's source was not the appellant. Therefore, *Olwell* is readily distinguishable. But, even if the privilege is stretched to protect evidence given to a defendant's attorney by defendant's spouse, *Olwell* is still inapt.[1] It was appellant's attorney who opened the door to the examination of the witness about the source of the rings by his questions and disclosures during his cross-examination. See *McDonald* v. *State,* 165 Ark. 411, 264 S.W. 961; *Smith* v. *State,* 172 Ark. 156, 287 S.W. 1026. If there was any violation of the attorney-client privilege, it was by appellant's attorney, who disclosed that he was the source of the rings by his questioning of Page, and who revealed to Page how he in turn had acquired them, if he made the statement attributed to him by Page.

Following the prosecutor's objection that appellant's attorney was exceeding the limits of cross-examination, appellant's attorney agreed that he had made Page his own witness and would be bound by his answers. See, *St. Louis, I.M. & S. Ry. Co.* v. *Raines,* 90 Ark. 398, 119 S.W. 665. He did not object at any time during Page's testimony on redirect examination. Rather, he chose to question the witness about that testimony and sought to elicit a retraction. And, in spite of the fact that Page had become his own witness on the matter of the rings, the court suffered him to attack Page's redirect testimony, thus, in effect, permitting appellant to confront the witness and seek to undermine his credibility. We emphasize that the record discloses that the rings had not been introduced in evidence and their whereabouts had not been mentioned, prior to the examination of Page on the subject by appellant's attorney.

Finally, appellant's attorney expressed a wish to testify on the matter himself and raised an objection based on hearsay only the next day, as part of a motion for mistrial, after

[1]Appellant's wife later took the witness stand as a witness for appellant and, without any claim of privilege, testified that she had never seen the rings until Tackett showed them to her when she was in the automobile with the Tackett law firm on the way to Judge Steel's residence where the rings were surrendered by Tackett.

nine other witnesses had testified and Sgt. Page had twice been recalled to the witness stand. This was decidedly too late. *Montgomery* v. *First National Bank of Newport,* 246 Ark. 502, 439 S.W. 299. Denial of a motion to strike testimony of a witness is not an abuse of the trial court's discretion, if no objection or motion is made until after other witnesses have testified. *Arkansas State Highway Commission* v. *Stallings,* 248 Ark. 1207, 455 S.W. 2d 874. We find no error in the admission of the testimony of Sgt. Page.

Because it was appellant's attorney who first mentioned the rings taken from the victim and revealed himself as the source, thus opening the door for testimony about them, it is doubtful that the matter remained in any respect privileged. Furthermore, appellant's attorneys failed to make timely objection to any of the remarks of the prosecuting attorney they now insist are prejudicial. The issue cannot be raised for the first time on appeal. *Payne* v. *State,* 246 Ark. 430, 438 S.W. 2d 462; *O'Neal* v. *State,* 253 Ark. 574, 487 S.W. 2d 618. Therefore, we cannot say that the court erred in permitting, or that prejudice arose from, requests by the prosecution that it be allowed to examine witnesses who could corroborate Sgt. Page's testimony regarding the conversation he had with appellant's attorney at the time the rings were turned over. These requests were made in conjunction with the state's timely objection to appellant's attorney's questioning of another witness, the wife of appellant, about the same transaction. At that time, appellant's attorney expressed his willingness to agree to the examination of such witnesses if he, too, were allowed to testify. The court said that he would be permitted to do so only if he disqualified himself from further participation in the case. He did not disqualify himself. After Mr. Dyas had testified and near the close of defendant's case, the trial judge advised Tackett that he would be permitted to testify. Thereafter, just before appellant's case was rested, and before commencing rebuttal, the prosecuting attorney asked if Mr. Tackett was going to testify. Tackett's partner assisting him in the trial responded, "No, sir, he is not at the request of his client." The state's attorney again mentioned its witnesses only after the close of testimony when a juror said he wanted to ask about the rings and appellant's attorney indicated he didn't mind if this case were reopened for this purpose. Nothing came of the request.

Appellant's first, second and third points for reversal are without merit.

4

There Was Insufficient Evidence Upon Which To Base A Jury Verdict And Court Judgment Finding Appellant Guilty Of Capital Felony Murder.

Charles Bean's testimony placed Dyas at negotiations regarding the murder at the Zachry home when the first attempt was made to lure Mr. Zachry out and murder him, at the scene of the crime, and in possession of a portion of a sum of money given to Bean by Mrs. Bessie Tolleson, mother of Carolyn Diane Zachry, as payment for the killing.

In his testimony about the actual killing, Charles Bean specifically mentioned that either he or appellant ordered Eugene Zachry to "turn out his pockets" as they intended to rob him. He also explained that he had Zachry remove his shoes and that appellant, as they returned from the scene of the crime, threw them into the creek from which they were later recovered. He also said that they robbed Zachry of all valuables and split the contents of his wallet. According to Albert C. Moore, who found Zachry's body, Zachry's pockets were turned out and his shoes were gone. Sheriff Surber and Sgt. Page both testified that there were no jewelry or valuables on the body when found, indicating that Zachry had been robbed. All of this enhanced the credibility of Bean's testimony, since, if an accomplice is corroborated as to some particular fact or facts, the jury is authorized to infer that he speaks the truth as to all. *Payne* v. *State*, 246 Ark. 430, 438 S.W. 2d 462.

Of course, the testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the commission of the offense in order to support a capital felony murder conviction. Ark. Stat. Ann. § 43-2116 (Repl. 1964). The requisite corroborating evidence must be of a substantial character and, of itself and independently of the statement of the accomplice, tend to connect the defendant with the commission of the crime but it need not in itself

be sufficient to support a conviction. *Shipp* v. *State,* 241 Ark. 120, 406 S.W. 2d 361.

Appellant admitted in his testimony that he accompanied Charles Bean during the murder. He said that he drove Bean to Zachry's house and then drove them to the scene of the murder, which he witnessed. He acknowledged that a .38 caliber pistol which he was carrying in his car was used by Bean to administer the coup de grace to Zachry, after Bean had emptied his own gun. He vowed that he was unaware of Bean's intentions, that he was an unwilling and unwitting companion, and that Bean threatened him in order to get him to cooperate. Yet, he admitted meeting Bean two days after the murder and giving him the .38 caliber pistol for disposal and later accepting two one hundred dollar bills from him, money which Bean had testified he received from Dianne Zachry's mother in payment for the killing.

We have held in a somewhat similar case in which the defendant was accused of murder during the commission of a robbery that the testimony of the defendant in which he admitted that he was present at the crime, but denied participation in the homicide, was itself sufficient corroboration to satisfy the statute and support a conviction. Ark. Stat. Ann. § 43-2116. *Ford* v. *State,* 205 Ark. 706, 170 S.W. 2d 671. While corroborating evidence must do more than raise a suspicion of defendant's guilt, it need not be direct, but may be circumstantial so long as it is substantial and tends to connect the defendant with commission of the offense. *Jones* v. *State,* 254 Ark. 769, 496 S.W. 2d 423. Presence of an accused in proximity to the crime, opportunity, association with persons involved in a manner suggesting joint participation and possession of instruments used in the commission of the offense are relevant factors in determining the sufficiency of corroboration by circumstantial evidence. *Jackson* v. *State,* 256 Ark. 406, 507 S.W. 2d 705. A witness, Raymond Cole, identified appellant as the person who accompanied Charles Bean and the driver of the car in which Bean arrived when, on the day of the murder, Bean borrowed the .22 caliber pistol used in the killing from George McClure. He also testified that Dyas was with Bean at the place and time McClure testified the pistol was returned. As noted already, appellant admitted that he had a .38 caliber pistol in his car on the night of the

murder and that Bean had used it to make sure Zachry was dispatched. Dr. Rodney Carlton, the State Medical Examiner, testified at the trial that he found a .38 caliber bullet in the victim's head. Loyse Zachry, the victim's father, testified that he saw appellant and Bean at the Zachry residence on the afternoon preceding the murder. William Lumpkin testified that on the night appellant was arrested and placed in a cell with him, appellant had asked him to provide him with an alibi for the night of the murder. Lumpkin also told of an earlier trip with Bean and Dyas to look the Zachry house over, during which he said the conversation related its purpose to the killing of Zachry.

There was sufficient evidence and sufficient independent corroboration of the testimony of Charles Bean to support the conviction of appellant.

5

The Court Erred In Admitting Into Evidence, Over The Objection Of Appellant, Statements Made By One Alleged Co-conspirator, Charles Watson Bean, To Another Alleged Co-conspirator, Carolyn Dianne Zachry, And The Substance Of Statements Made By Carolyn Dianne Zachry To Charles Watson Bean, All In The Absence Of Appellant.

In his testimony, Charles Bean related that he had spoken by telephone with Carolyn Zachry in early December, 1974 to arrange a meeting, and that they later met and Bean offered to kill Eugene Zachry. Upon appellant's objection, the trial court directed that Bean's testimony be limited to what he had said in the conversation and not relate what Mrs. Zachry may have said to him. In testifying about his meeting with Mrs. Zachry, Bean said that she had indicated that she was in a hurry and wanted him to "do it" as soon as possible. Appellant's attorney again objected to the admission of that which was said in the absence of the appellant. The objection was sustained and the court instructed the jury to disregard the information obtained by Bean from Mrs. Zachry.

Appellant argues that the conversation was inadmissible

hearsay. We agree that anything said by Mrs. Zachry was, but Charles Bean's own words were not, hearsay. The court limited his testimony in advance to this part of the conversation and properly admonished the jury to disregard the testimony about what Mrs. Zachry indicated. Any error was cured by prompt action and appellant was not manifestly prejudiced. *Moore* v. *State,* 251 Ark. 436, 472 S.W. 2d 940. Appellant did not move for a mistrial.

Appellant also suggests that the testimony was improper because appellant had not yet become involved in the conspiracy and the state had not yet established a prima facie case of conspiracy against appellant. He concedes, however, that evidence of previous acts of co-conspirators may be admissible against a defendant once a prima facie case of conspiracy has been proved and the nature and objectives of the conspiracy shown by the state. *Willis* v. *State,* 67 Ark. 234, 54 S.W. 211. We have held that it is within the discretion of the trial court to permit the statement of an alleged conspirator to be introduced in a prosecution of a fellow conspirator before evidence tending to prove the conspiracy has been introduced. *Easter* v. *State,* 96 Ark. 629, 132 S.W. 924. Here, as in *Easter,* it was later in the testimony of the same witness that the evidence tending to establish the conspiracy was introduced and it was a matter within the sound judicial discretion of the court to control the order in which the testimony should be adduced. *Easter* v. *State,* supra. After the trial judge had permitted Bean to state what he had said to Mrs. Zachry, over appellant's objection that Mrs. Zachry was not on trial, Bean testified that he had met with Mrs. Zachry immediately after the telephone call, told her that he had been told that she wanted her husband done away with, thought he could arrange it if they could get together on the price, that they did agree on it, and he told her that he was relatively sure Monroe Lindsey would not do the job, and that he was alone that day, but did not intend to do the job alone. No objection was made to any of this testimony. It was when appellant testified that he told Mrs. Zachry that he would have to have a few days to get things lined up and that she was in a hurry to get it done and wanted him to do it as soon as possible, that appellant first objected to what was *said* in his absence. The trial court then admonished the jury to completely disregard information Bean obtained from Mrs.

Zachry. Appellant made no further objection, asked no
further admonition and did not move for a mistrial. Bean
then proceeded, without any objection being made, to relate
that he made several trips to Ashdown to meet with Mrs.
Zachry and that Dyas was present on some of the occasions.
No objection was made to this testimony. We find no error in
the admission of Bean's testimony, insofar as objections made
are concerned.

6

The Court Erred In Admitting Into Evidence, Over The
Objection Of Appellant, Statements Made By
Witnesses For The State, Concerning Financial
Arrangements Made By Alleged Co-conspirator,
Carolyn Dianne Zachry, In The Absence Of Appellant.

The state called and examined two witnesses who
testified about financial transactions carried out by Carolyn
Dianne Zachry. In response to appellant's first objection that
he had not been present when these transactions took place,
the state answered that the testimony was offered to establish
the motive and the court permitted the testimony. Mr. Bill
Brown, president of the Bank of Ashdown, said that Carolyn
Dianne Zachry had executed two promissory notes, and that
he had made two loans to her before and after the killing. The
first was in the amount of $2,000 on 29 October 1974. Ad-
mittedly the transaction predated appellant's involvement in
the conspiracy under any view of the evidence. Bean testified
that it was in December that he proposed that Dyas join him
in the murder scheme and Dyas agreed to participate.
However, it is significant that Bean made a promise of money
to interest Dyas in the scheme.

Bean said he approached Dyas by inquiring whether
Dyas would be interested in helping Bean do something in
which quite a bit of money, approximately $5,000, was in-
volved, on a fifty-fifty basis, and that Dyas agreed that he
would. Thereafter, according to Bean, Dyas became involved
in negotiations with Mrs. Zachry when she decided that she
would not be able to pay until after the commission of the
crime, and the price was doubled. Bean said that this agree-
ment was reached in December and that he met and talked

with Dyas about the murder of Zachry on other occasions. He said that after he and Dyas had decided to do this together, they came to Ashdown on numerous occasions and, when a money problem arose, Dyas was with him when he met Mrs. Zachry at a carwash on the New Boston road in Texarkana. Bean could not recall whether Dyas had first seen Mrs. Zachry on this occasion or on the occasion of a meeting at a Piggly Wiggly store, but said that he believed that, at the meeting at the carwash, Mrs. Zachry had been unable to come up with the money to pay them $5,000 so it was agreed that they would wait until after the killing for the money, but that the price would be $10,000. He said that Dyas was present when the matter was discussed with Mrs. Zachry.

Mr. Brown testified that the second loan in the amount of $1,500 was made on 16 January 1975, eight days after the killing, and certainly after Dyas is alleged to have joined the conspiracy. There was no error in the admission of this evidence of the latter transaction by him as co-conspirator. *Easter* v. *State,* supra.

The second witness, Miss Mary Lou Moore, manager of the Ashdown branch of First Federal Savings and Loan, testified about a certificate of deposit issued to and two withdrawals made by Carolyn Dianne Zachry on 29 October 1974. Like the first transaction testified to by Mr. Brown, this transaction admittedly came before any involvement by appellant in the conspiracy. In light of the fact that money was the only inducement and motive for Bean's and Dyas' involvement in the murder, this testimony certainly cannot be said to have been irrelevant as appellant contends, particularly when viewed in the light of other testimony of Bean regarding his receipt of money from Carolyn Dianne Zachry and her mother. Furthermore, previous acts of a co-conspirator may be admissible against a defendant once a prima facie case of conspiracy is proved when such acts show the nature and objectives of the conspiracy. *United States* v. *Morton,* 483 F. 2d 573 (8th Cir., 1973). Although we have said that the acts and declarations of any conspirator, in furtherance of a common enterprise, are admissible against any or all of the others, such acts or declarations must be done or said while the conspiracy is in progress and not before it has begun. *Willis* v. *State,* supra. Still, we cannot say

that the testimony about the transactions was devoid of probative value in the establishment of the state's case of a contract murder and conspiracy. Bean's testimony would show that Dyas entered into an ongoing conspiracy and would tend to explain the connection and joint action of the parties in the premises. See, *Lesieurs* v. *State,* 170 Ark. 560, 280 S.W. 9. In the light of this testimony and other strong independent evidence of appellant's guilt, we cannot say that there was reversible error in the admission of any of the testimony to which objection was made.

7

The Court Erred In Admitting Into Evidence, Over The Objection Of Appellant, Statements Made By Witnesses For The State, Concerning Life Insurance Policies Taken Out By The Murder Victim, In The Absence Of Appellant, And Remote In Time.

Testimony by James E. Cobb and Wetzell Ward showed that Eugene Zachry had in the past purchased three policies of insurance on his life and that these were still in force at the time of his death. Appellant argues that their testimony was irrelevant and constituted hearsay.

Appellant does not demonstrate why the testimony about the issuance of the policies should be regarded as hearsay. In both cases the witnesses themselves had sold the policies about which they testified to Zachry. We find no error in this respect in admitting the testimony.

The testimony was relevant as it related to the motive underlying the conspiracy and murder. It was probative as to the motivation of Carolyn Dianne Zachry, appellant's co-conspirator. We have already discussed the evidence which showed that Bean originally contracted with Mrs. Zachry to do the killing for $5,000 and that he used a promise of big money to interest appellant in the crime. The testimony objected to was perhaps most relevant to the negotiations that took place between Mrs. Zachry and the killers after Dyas had joined the conspiracy and Mrs. Zachry decided that she was unable to pay in advance. The new agreement called for $10,000 payable after the murder, according to Bean. It

might reasonably be inferred that there was a relevant connection between the existence of these policies and Mrs. Zachry's ability to pay twice as much after the death of her husband than the original contract had stipulated. Appellant's point is without merit.

### 8

The Court Erred In Admitting Into Evidence Radio Logs And Statements Concerning Radio Logs Maintained By The City Of Ashdown, Arkansas, Over The Objection Of Appellant That Said Logs And The Testimony Of Witnesses Concerning The Logs Constituted Hearsay.

The logs about which appellant complains were made on the evening of 28 December 1974 by the dispatcher for the Ashdown City Police Department, Betty Davis, on the basis of whose testimony they were admitted into evidence. This was the evening, according to Charles Bean, on which Dyas had accompanied Bean to the Zachry residence and attempted to persuade Eugene Zachry to admit them to the house by telling him that there had been a wreck down the road and asking to use his phone. Bean said that Zachry spoke to them through a window, refused them admittance and said he would phone himself. The telephone log showed that a wreck had been falsely reported at 11:15 p.m. on the evening of the 28th. The log next showed that some thirty-five minutes later Eugene Zachry telephoned and said that he was the one who had made the earlier call reporting the wreck. The log contained a physical description of a man Zachry said had come to his door requesting to use the phone to report the wreck and noted that Zachry had opined that the person had "just wanted to get into the house." W. D. Webster, Chief of Police for Ashdown, testified that he was the custodian of the records of the police department, including the telephone logs. He identified the logs as official records of the City of Ashdown and stated that they were kept in the due course of business. Upon appellant's objection, the court held an in-chambers hearing to decide the admissibility of the logs where it was adduced that Webster had kept the logs for four years, that they were always accurate, never altered and checked daily. After the hearing in camera,

Webster identified the log. When he was asked to read the item pertaining to Zachry's call, the circuit judge interjected, and, out of the hearing of the jury, indicated that it should not be read to the jury until it had been substantiated by the dispatcher who recorded it. The judge then stated in open court that the record would not be read at that time to the jury. The record was then marked for identification and the court and appellant's attorney agreed that this was done with the limitation that it be substantiated and that it was not for the purpose of establishing the truth of the matter but that it was introduced only for establishing the fact that it was the official record. The prosecuting attorney then stated that he had no further question and that he didn't suppose there would be any cross-examination of the witness, but appellant's attorney, Moore, stated that he would like to cross-examine and was permitted to do so. The cross-examiner then proceeded to read the item and Webster confirmed his reading, in spite of the prosecuting attorney's protest that he didn't want appellant's attorney to read the log and then object to it. The cross-examining attorney then established by the testimony of Chief Webster that the description given by Zachry could fit numerous persons, including the attorney himself. He further emphasized through this examination the absence of any limp by the person described. This was pertinent because other testimony had established that one of Dyas' legs was shorter than the other and indicated that he walked with a decided limp. The logs were thereafter admitted into evidence under the exception to the hearsay rule for records made in the regular course of business, during the testimony of the dispatcher. Ark. Stat. Ann. § 28-928 (Repl. 1962) permits the introduction into evidence of records made in the regular course of business, the entries having been made to record "any act, transaction, occurrence or event, if made in the regular course of business." There was sufficient evidence in the record to meet the requirements of the statute to show that the records were regularly kept and made within a reasonable time after the event recorded. *Harrison v. State Farm Mutual Ins. Co.,* 230 Ark. 630, 326 S.W. 2d 803. Therefore, we find no error in the court's admission of the logs as they reflected that the two calls were received on the evening in question from Zachry, the nature of the report given by Zachry and the fact that the police investigated and found the report to be false. These

were the sort of "transactions" the statute contemplates. No objection was made to the reading of the log by the prosecuting attorney after it had been authenticated by the testimony of the dispatcher as to accuracy. The prosecuting attorney then asked permission to pass the log to the jury but, before doing so, remarked that someone had indicated the pertinent part by marking it with blue ink, and inquired whether there were any objections to this mark and received a negative response from appellant's chief counsel. Thereafter, one of appellant's attorneys established by cross-examination of the witness that she knew Eugene Zachry and recognized his voice when he called, that Zachry didn't describe any limp or other physical characteristics of the person who came to the window, that she knew Dyas, and would describe him as walking with a limp.

Appellant is in no position to complain about the admissibility of Zachry's description of the person who came to the Zachry house and Zachry's opinion, because appellant's attorneys brought out the most damaging part of it, insofar as Dyas was concerned, apparently in an effort to emphasize through the state's witnesses the generality of the description and the lack of mention of what seems to have been Dyas' most obvious physical characteristic. At any rate, no further objection was made after the cross-examination of Webster and no request was ever made to limit the record evidence to that which was admissible under the Business Records Act.

9

The Court Erred In Admitting Into Evidence A .22 Caliber Revolver Allegedly Belonging To Appellant, Said Revolver Being Immaterial To The Facts And Matters In Issue And Being Inherently Prejudicial To Appellant And In Violation Of His Constitutional Rights.

The pistol to which appellant refers was not listed on the search warrant used for a search of appellant's house during the investigation of the murder. But it was taken from appellant's automobile at the time of the search. The state points out that appellant's attorney, J. O. Moore, first elicited testimony about a pistol owned by appellant other

than the .38 caliber one used in the crime during his second cross-examination of Charles Bean. Bean was unable to describe the pistol accurately and so on redirect the prosecutor showed the .22 pistol to Bean who was still unable to identify it as the one he had seen. When the pistol was finally offered into evidence, appellant admittedly interposed no objection. Not having objected during the trial, appellant cannot complain for the first time on appeal.

We do not agree, as appellant has asserted, that this is the sort of plain or fundamental error which renders an objection unnecessary. Furthermore, appellant would be hard pressed to argue that the admission of the pistol prejudiced him in light of his own testimony that he had the pistol with him in the console of his car on the night of the murder and yet did not use it to try and prevent the killing.

## 10

Appellant Jimmy Lee Dyas Personally Insists That The Court Erred In Trying His Case Because Of The Relationship Between The Trial Judge And The Prosecuting Attorney.

Not only did appellant fail to object to Judge Steel's hearing of the case or request that he disqualify himself, but his brief reveals that his attorneys declined to accept Judge Steel's offer to disqualify himself prior to the trial. Appellant argues only that his attorneys should have consulted him before assenting to Judge Steel's continued handling of the case. The actual record is deficient on this point and appellant's complaint is too late and cannot be raised for the first time on appeal. We note that the identical surnames of the judge and the prosecuting attorney were obviously known.

## 11

SUPPLEMENTAL ABSTRACT — CHARLES WATSON BEAN SENTENCING ACTIVITIES: The Court Erred In Refusing To Entertain Appellant's Motion For A New Trial, In Obedience To A Supreme Court Order; And Misinterpreting The True En-

titlements Of Appellant To The Sentencing Activities Of Charles Watson Bean.

The majority relies upon its reasoning and maintains the same conclusions it reached on the same issue in *Zachry v. State,* 260 Ark. 97, 538 S.W. 2d 25 (1976), although the writer adheres to the same views he expressed in his concurrence in *Zachry v. State,* supra.

12

The Arkansas criminal statutes upon which appellant Jimmie Lee Dyas was convicted and sentenced to life imprisonment Ark. Stat. Ann. § 41-4702 (A) 4711 and 2205 there committing him without the privilege of a parole, are unconstitutional, in that they abridge the constitution of the United States and the state of Arkansas, they violate appellant's Eighth-amendment assurances — nor shall cruel and unusual punishment be inflicted.

We have already specifically determined that Ark. Stat. Ann. § 41-4702 (Supp. 1975) is not violative of the Arkansas Constitution. *Rogers v. State,* 257 Ark. 144, 515 S.W. 2d 79.

Appellant does no more than offer the flat assertion that a sentence of life imprisonment without parole is violative of Amend. VIII of the United States Constitution. We do not consider a life sentence cruel or unusual in the light of pertinent standards. See, *Hinton v. State,* 260 Ark. 42, 537 S.W. 2d 800 (1976). If a sentence is, as here, within the limits established by the legislature, it is valid against the insistence that the punishment is unconstitutionally excessive. *Rogers v. State,* supra; *Smith v. U.S.,* 407 F. 2d 356, cert. den. 395 U.S. 966 (8th Cir., 1968). His contention that his accomplice Bean's receipt of a lesser sentence somehow entitles him to relief is without merit. See *Thornton v. State,* 243 Ark. 829, 422 S.W. 2d 852.

Appellant does not show how he was denied assistance of counsel. He seems to weave into his argument on this point, the same argument made about a recording device in *Zachry v. State,* supra. The record here gives less support to the

argument than it did in *Zachry*. His suggestion that he was denied assistance of counsel is without merit.

13

The court erred when failing to bring the charges before a grand jury the state failed to provide equal protection by such failure in that the state had no proof that would cause the jury to return an indictment and didn't have until co-defendant Charles Watson Bean was Bribed thus there was a definite of probable cause initially.

We have long recognized that a criminal defendant may be properly charged either by indictment or information. Ark. Stat. Ann. Const. Amend. 21; Ark. Stat. Ann. § 43-806 (Repl. 1964); *Davis* v. *State,* 246 Ark. 838, 440 S.W. 2d 244, cert. den. 403 U.S. 954 (1971); *Ellingberg* v. *State,* 254 Ark. 199, 492 S.W. 2d 904.

14

The State failed to provide equal protection when making a show of the trial a sham by not moving the trial to another county the court erred in permitting a public expose of economical and political enhancement to the prosecuting attorney.

Appellant neither moved for a change of venue nor raised any timely objection based on the assertions he makes in this point. His attempt to raise these issues on appeal is too late and cannot be considered.

15

The Court erred and the state failed to provide appellant Jimmie Lee Dyas equal protection when allowing evidence obtained by illegal search and seizure to be introduced.

No objection was raised in the trial court either as to the validity of the search of appellant's automobile or the introduction of a .25 caliber pistol which was found in a pawn shop. The .38 caliber pistol listed in the search warrant was

never recovered or introduced into evidence. We will not consider appellant's objections for the first time on appeal.

We have examined the record and have considered all other objections raised therein and found none that merit consideration.

The judgment is affirmed.