**Jimmie Lee DYAS, Appellant,**

v.

**Art LOCKHART, Commissioner of Arkansas Department of Correction, Appellee.**

**No. 82–2016.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1983.

Decided April 21, 1983.

Rehearing and Rehearing En Banc Denied June 14, 1983.

---

Paul Petty, Lee A. Biggs, III, Searcy, Ark., for appellant.

Steve Clark, Atty. Gen. by Leslie M. Powell, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

In 1975, habeas petitioner Jimmie Lee Dyas was convicted of capital felony murder by a jury in the Little River (Arkansas) Circuit Court. Dyas was sentenced to life imprisonment without possibility of parole. The presiding judge at Dyas' trial was the now deceased Judge Bobby Steele, who was the uncle of the Prosecuting Attorney and the brother and father of the two Deputy Prosecuting Attorneys who participated in the prosecution of Dyas. Before trial, Judge Steele *sua sponte* wrote Dyas' trial counsel and offered to disqualify himself because of his relationships with the Prosecuting Attorneys. Dyas' counsel refused Judge Steele's offer to disqualify.

In his *pro se* direct appeal to the Arkansas Supreme Court, Dyas claimed *inter alia* Judge Steele was disqualified from trying the case given his relationship with the Prosecuting Attorneys. Dyas alleged that he was not personally aware of Judge Steele's disqualification offer because trial counsel had not communicated the offer of recusal to him. The Arkansas Supreme Court, addressing this allegation stated: "The actual record is deficient on this point and appellant's complaint is too late and cannot be raised for the first time on appeal. We note that the identical surnames of the judge and the prosecuting attorney were obviously known." *Dyas v. State,* 260 Ark. 303, 323, 539 S.W.2d 251, 263 (1976).

In 1981, after Dyas had exhausted his Arkansas post-conviction remedies, he filed his habeas petition in the United States District Court, Eastern Division. Dyas alleged that Judge Steele's refusal to disqualify himself violated Arkansas constitutional and statutory law, the Code of Judicial Conduct adopted by the Arkansas Supreme Court, and the due process clause of the fifth and fourteenth amendments. The case was assigned to District Judge Elsijane T. Roy, who, in turn, assigned the case to U.S. Magistrate Henry Jones for a proposed recommendation for disposition of the case. Judge Roy had served as an associate justice of the Arkansas Supreme Court when Dyas' conviction was affirmed by that Court on direct appeal.

Judge Roy, adopting Magistrate Jones' recommendation, dismissed Dyas' petition without a hearing, concluding that Dyas' disqualification claim stated no due process violation because there was no specific showing of prejudice or unfairness in the trial. Judge Roy also noted that Dyas' counsel had failed to accept Judge Steele's recusal offer.

On appeal, Dyas contends he was denied his due process right to a fair trial by Judge Steele's presiding over his criminal trial. Dyas suggests that, absent a showing that he personally waived Judge Steele's disqualification offer, this court should conclusively presume actual bias and, hence, actual prejudice from Judge Steele's relationship to the Prosecuting Attorneys.

Certainly, a fair trial in a fair tribunal is a basic requirement of due process. *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). And the right to a fair trial necessarily requires that the trial judge be neutral, detached, and free from actual bias. *Id., Ward v. Monroeville,* 409 U.S. 57, 61–2, 93 S.Ct. 80, 83–4, 34 L.Ed.2d 267 (1972). However, before determining whether Judge Steele's relationship with the Prosecuting Attorneys necessarily suggests unconstitutional bias, we need to address the threshold question of whether Dyas personally waived Judge Steele's disqualification offer. If Dyas knew of Judge Steele's disqualification offer and nevertheless declined to accept it, he cannot now be heard to claim that he was denied due process by Judge Steele's presiding at his criminal trial. *Johnson v. United States,* 318

U.S. 189, 201, 63 S.Ct. 549, 555, 87 L.Ed. 704 (1943).

■ Unfortunately, neither the Arkansas Supreme Court nor the district court addressed whether Dyas was given an opportunity to accept Judge Steele's recusal offer. The Arkansas Supreme Court simply found that Dyas could not raise the disqualification issue for the first time on appeal. The district court noted that Dyas' counsel was aware of Judge Steele's offer, but did not address whether Dyas was aware of that offer. During oral argument before this court, however, counsel for the State of Arkansas indicated that two of Dyas' four trial counsels had told Dyas about the disqualification offer.

■ Under the circumstances, we conclude it is appropriate to remand this case to the federal district court for a hearing on the question of whether Dyas knew about and nevertheless declined to accept Judge Steele's recusal offer. *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). *See also Blackwell v. Brewer,* 562 F.2d 596, 600 (8th Cir.1977) (remand to district court for hearing on whether petitioner waived objection to alleged constitutional error in conduct of trial, where neither state court nor district court had addressed waiver issue).[1]

Assuming that the district court determines after a hearing that Dyas did not personally waive Judge Steele's disqualification offer, Dyas contends the district court must grant his petition. Dyas suggests that, absent his personal waiver, he was denied due process because Judge Steele is conclusively presumed to be biased given his relationship to the Prosecuting Attorney; Dyas claims that he need not demonstrate Judge Steele's actual bias or actual prejudice.

■ Generally, a habeas petitioner seeking reversal of his conviction on due process grounds because of the trial judge's alleged bias must demonstrate that the judge was actually biased or prejudiced against the petitioner. *See Corbett v. Bordenkirder,* 615 F.2d 722, 723–24 (6th Cir. 1980); *Brinlee v. Crisp,* 608 F.2d 839, 852–53 (10th Cir.1979); *compare Smith v. Phillips,* 455 U.S. 209, 215–220, 102 S.Ct. 940, 944–947, 71 L.Ed.2d 78, 85–87 (1982) (petitioner alleging juror bias must prove actual bias to establish due process claim). However, as the Supreme Court has recognized, "[n]ot only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'" *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), *quoting In re Murchison,* 349 U.S. at 136, 75 S.Ct. at 625. Accordingly, there are cases where "experience teaches that the probability of actual prejudice on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* For example, experience teaches that the probability of actual bias is too high where the judge has a pecuniary interest in the outcome of a trial[2] or where the judge has been the target of personal abuse or criticism from the party before him.[3] *Id.* The test in determining if a judge's bias should be presumed in a particular case is whether, realistically consider-

---

1. Dyas urges that under Canon 3 C(1)(d)(ii) and 3 D of the Code of Judicial Conduct, which was adopted by the Arkansas Supreme Court in 1974, the only acceptable form of waiver is his signed written waiver. This written waiver requirement, however, has been held to be applicable only from date of May 22, 1978, which is subsequent to Dyas' trial. *See Edmonson v. Farris,* 263 Ark. 505, 510, 565 S.W.2d 617, 619 (1978); *Adams v. State,* 269 Ark. 548, 553, 601 S.W.2d 881, 883 (1980). Moreover, Dyas' claim here is brought under the due process clause of the fourteenth amendment, not under Arkansas rules for waiver of a judge's disqualification. Dyas has not suggested and we fail to see why the due process clause of the fourteenth amendment would require the personal written waiver requirement set forth in the Canons of the Code of Judicial Conduct.

2. *Ward v. Monroeville,* 409 U.S. 57, 61–62, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972); *Tumey v. Ohio,* 273 U.S. 510, 511, 47 S.Ct. 437, 438, 71 L.Ed. 749 (1927).

3. *Taylor v. Hayes,* 418 U.S. 488, 501–03, 94 S.Ct. 2697, 2704–05, 41 L.Ed.2d 897 (1974); *Mayberry v. Pennsylvania,* 400 U.S. 455, 464–66, 91 S.Ct. 499, 504–05, 27 L.Ed.2d 532 (1971).

ing psychological tendencies and human weaknesses, the judge would be unable to hold the proper balance between the state and the accused. *Tumey v. Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749; *Withrow v. Larkin,* 421 U.S. at 47, 95 S.Ct. at 1464; *Taylor v. Hayes,* 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897 (1974). In making this inquiry we, of course, presume the honesty and integrity of those serving as judges. *Withrow v. Larkin,* 421 U.S. at 47, 95 S.Ct. at 1464.

■ We conclude that Judge Steele's relationship to the Prosecuting Attorneys was, standing alone, insufficient to raise the conclusive presumption of his actual bias. Judge Steele had no personal interest in the outcome of the case other than fairly trying and submitting the issues to the jury. Dyas' sole basis for imputing bias here is that Canon 3 C(1)(d)(ii) of the Code of Judicial Conduct[4] requires disqualification where a "person within the third degree of relationship" to the judge is "acting as a lawyer in the proceeding." *See Potashnick v. Port City Const. Co.,* 609 F.2d 1101, 1112–13 (5th Cir.1980) (court interpreted 28 U.S.C. § 455(b)(5)(ii) (1976), which is substantially identical to Canon 3 C of the Code of Judicial Conduct, to require automatic disqualification where a person within third degree of relationship to judge is acting as an attorney). *See also United States v. Conforte,* 624 F.2d 869, 881 (9th Cir.1980). However, a trial judge's disqualification under the Code of Judicial Conduct does not necessarily imply impermissible bias under the due process clause. *See Note, Disqualification of Judges and Justices in the Federal Courts,* 86 Harv.L.Rev. 736, 746 (1973). Furthermore, the case before us is distinguishable from those cases where an unconstitutionally high probability of actual bias was found to exist, such as where the judge had a pecuniary interest in the outcome of the trial or where he had been the target of the defendant's severe personal abuse. Here, the Prosecuting Attorneys were acting in the interest of the State of Arkansas, not in their own personal, financial interests. Furthermore, the relationship here does not necessarily suggest that Judge Steele had such a strong personal or financial interest in the outcome of the trial that he was unable to hold the proper balance between the state and the accused. *In re Murchison,* 349 U.S. at 136, 75 S.Ct. at 625.

■ However, if on remand the district court determines that Dyas did not personally waive Judge Steele's disqualification offer, Dyas should be provided a hearing in which he has the opportunity to prove Judge Steele's actual bias. *See Smith v. Phillips,* 455 U.S. 209, 215–219, 102 S.Ct. 940, 944–947, 71 L.Ed. 78, 85–86 (1982) (remedy for defendant's claim of juror partiality is hearing in which defendant has opportunity to prove actual bias). The district court should consider Judge Steele's relationship with the Prosecuting Attorneys as one factor, although not the only factor, in determining whether Dyas was denied his constitutional right to a neutral and detached trial judge. The district court should also consider Judge Steele's overall conduct during the course of the trial and whether he exhibited any specific prejudice or bias against Dyas.

■ Finally, while we do not believe District Judge Roy's failure to *sua sponte* recuse herself suggests any impropriety on her part,[5] we nevertheless conclude that a remand to another district judge in the Eastern District of Arkansas would be in accordance with the purpose behind 28

---

**4.** Canon 3 C(1)(d)(ii) of the Code of Judicial Conduct, which was adopted by the Arkansas Supreme Court in 1974 (*See Adams v. State,* 269 Ark. 548, 601 S.W.2d 881, 882 (1980)), provides in pertinent part:

    C. Disqualification
    (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

    (d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of each person:

    (ii) is acting as a lawyer in the proceedings.

**5.** Dyas never raised the issue of Judge Roy's possible disqualification in the district court.

U.S.C. § 455(a) (1976) of assuring the "appearance of impartiality." *See United States v. Poludniak,* 657 F.2d 948, 954 (8th Cir.1981).